3pw447<br>177 165

## LIGHTY *against* SHORB.

*Caveat empter* is maxim which enters into every purchase where the contrary is not stipulated; and equity can not relieve against it any more than it can against the terms of a bargain.

A contract for the sale of land is considered to be *in fieri,* while it remains unexecuted by a conveyance, (the final accomplishment and consummation of all previous stipulations;) after which the purchase money may not be detained or recovered back, but by force of a covenant or fraud, for any incumbrance or defect of title whatever. But if an incumbrance be discovered before the execution of the conveyance, it must be discharged by the vendor, whether there be an agreement to covenant against it or not, unless it be contingent; and then if it be agreed in the articles, that the vendor shall covenant against it, the vendee having reserved that particular remedy, shall not resort to the additional one of detaining the purchase money; but if actually evicted, he may detain or recover it back, though the intended covenants would not have extended to the particular incumbrance or defect by which the eviction was occasioned.

Where there is a known defect in title, but no covenant or fraud, the vendee can avail himself of nothing: but where there is a covenant against a known defect, he shall not detain the purchase money, unless the covenant has been broken.

Writ of Error to the Common Pleas of *Centre* county.

This action was brought by *William Lighty* for the use of *George B. Engles* against *Anthony Shorb.* The plaintiff, to support his action, gave in evidence the following draft:

*Penn'a. Furnace, July* 8, 1830.

*Barnet and Shorb, Pittsburg,*

Please to pay *Wm. Lighty,* seven hundred and fifty-eight dollars, on the first of August, for a tract of land purchased from him.

$758.    A. Shorb.

(Lighty *v.* Shorb.)

On the 21 July, 1830, *A. Shorb* gave notice to *William Lighty* that the draft would not be paid.

The defendant, to support the issue; on the plea of payment with leave, &c. offered in evidence an agreement between *William Lighty* and *Barnetz* and *Shorb;* to the reading of which; the plaintiff objected, on the ground, that it was consummated by the execution and delivery of a deed. The objection was over-ruled, and the agreement read as follows:

"Article of agreement, made and concluded, the 8th day of April, A. D. 1830, between *William Lighty*, of *Patton* township, *Centre* county, and State of *Pennsylvania*, of the one part, and *Barnetz* and *Shorb* of the other part, as follows to wit: The said *Lighty*, for and in consideration hereafter mentioned, has sold all that certain tract of land, surveyed under the name of *William Lambourn*, lying and being in *Half-moon* township, *Centre* county, adjoining lands of *Henry Yoder* and others, containing about four hundred acres, more or less, with allowance; he is to make a good and clear title, clear of all incumbrances whatever, with a general warranty unto them, on or before the first of August next, or at any time required: immediate possession is to be given, and no further timber to be cut, by any person buying under *Lighty* whatever, except ten trees by himself, on the corner next to *Yoder's* for sills. For and in consideration of two dollars an acre, whatever it may contain, with the allowance, given in the following manner: fifty dollars by signing the article, and the balance on the 1st day of August next, by a draft on *Pittsburg*, on *Barnetz* and *Shorb* at sight or on that day. In testimony whereof, &c."

The defendant then gave in evidence a patent of 14th April, 1808, for the land mentioned in the agreement, to *Job Packer* and *Hannah* his wife; in which there was this recital "which said tract was surveyed in pursuance of a warrant, dated 24th Sept. 1792, to *William Lambourn*, who died intestate, leaving one daughter, as his only legal issue, named *Hannah*, who intermarried with the said *Job Packer.*" After the granting of this patent *Hannah Packer* died leaving issue nine children. On the 8th December, 1820, *Job Packer* conveyed a *moiety* of this tract of land to *Isaac Couden* and wife, (a daughter of *Job's*) and another moiety to *John Row* and wife (another daughter.) November 17, 1821, *Isaac Coudon*, and wife conveyed to *Wm. Lighty*, and on the 22nd February, 1823, *John Row* and *wife*, conveyed to *Wm. Lighty* also. On the 11th Sept. 1823, *Job Packer* executed and delivered to *Wm. Lighty* a bond in the penalty of one thousand and fifty-five dollars, conditioned, that he would warrant and defend the title to the said land. On the 22nd June, 1830, *William Lighty*

(Lighty *v.* Shorb)

executed a deed to *Barnitz* and *Shorb*, for the land; containing a covenant of general warranty, which, together with the patent and the above mentioned deeds and "title bonds," were all delivered to *Barnitz* and *Shorb*, on the day of the date of the draft, upon which the suit is brought. On the trial of the cause, the plaintiff offered to repay to the defendant fifty dollars, which he had received on the contract, with its interest, give up the draft upon which the suit was brought, and take a reconveyance of the land. The defendant refused this, but offered to pay the amount of the draft, upon being made secure in his title.

The counsel for the plaintiff requested the court to charge the jury—

1. If they find the facts to be, that *A. Shorb*, when he accepted the title papers, bond of *Job Packer*, and deed of *William Lighty* and wife, knew of the situation of the title, and accepted of the personal security for the same, he will in law be compelled to pay the money.

2 If the parties were aware of the defect of title, when the deed was accepted and the draft given, and provided for it by the covenant of warranty and *Job Packer's* bond, then the defect of title is no defence to the recovery of the money.

3. That the acceptance of the deed of *Lighty*, with the covenant of general warranty and the title papers, are a merger of the covenants in the article of agreement.

4. That the recital in the patent, being the title through which the land was conveyed to *Shorb*, is of itself *prima facie* evidence that he knew the defect of title, when he accepted the deeds, title papers, and bond of *Job Packer*.

5 That the plaintiff ought to accept the offer of *Dr. Engles*, and reconvey the land, or he is bound to pay for it.

The Court answered 1.—It is true, that a person may purchase at his own risk, and may accept an imperfect title, and if he does so knowingly, he will be bound. But in the case before us, there is nothing to shew beyond the papers, that the defendant knew of the situation of the title; besides, the deed of general warranty is totally inconsistent with the acceptance of an imperfect title. We cannot instruct you as required.

2. The acceptance of the deed is a merger of the covenants in the articles of agreement. But this does not help the plaintiff in the cause before us.

3. The defendant has a right to set up the defect of title, at any time before he has paid his money, under the facts disclosed in this case. There is no fact, that we can discover, to take it out of the well settled principles in *Stinehauer* and *Whitman*, *Hart* and *Porter*, and *Custer* v. *Reynolds*, and many other solemn decis-

Lighty *v.* Shorb.

sions of the Supreme Court. There is no evidence that we can discover except the recital in the patent, and the written evidence, to show that he did know of the defect. But if he even did know of it, and was bound to know of it, we think he may set it up as a defence. If there was clear and demonstrative evidence of an express agreement, to take the bond of *Packer*, and to accept that, it might be otherwise; but it would be most strange to infer it from the evidence in the cause, when it is inconsistent with the covenant in the deed.

4. The plaintiff is not bound to accept the offer of *Dr. Engles.*

5. The recital in a patent is to effect persons claiming under and through that patent. But if he even did know (which we do not believe) of the defect of title, still under his deed of warranty and the facts disclosed, he can set up this defect of title against the payment of the purchase money. The points so ingeniously put, are not well warranted by the facts in the cause. There is nothing in the judgment of the court, in this case, to take it out of the well settled principle, that equity will stop payment when there is want of consideration.

We have said the plaintiff is not entitled to recover beyond the two ninths part, for which they have shown title.

This charge of the court was assigned for error.

*Potter,* for plaintiff in error.

*Blanchard,* for defendant in error.

The opinion of the court was delivered by

Gibson, C. J.—*Caveat emptor* is a maxim which enters into every purchase, where the contrary is not stipulated; and equity cannot relieve against it, because it cannot relieve against the common law or the terms of a bargain. The contract, however, is considered to be *in fieri* while it remains unexecuted by a conveyance, the final accomplishment and consummation of all previous stipulations; after which, the purchase money may not be detained, according to the English law, or recovered back, but by force of a covenant or fraud, for any incumbrance or defect of title whatever. On the other hand, an incumbrance, discovered before the execution of the conveyance, must be discharged by the vendor, whether there be an agreement to covenant against it or not, unless it be contingent, and then if it be agreed in the articles that the vendor shall covenant against it, the vendee having reserved that particular remedy, shall not resort to the additional one of detaining the purchase money; but if actually evicted, he may detain or recover it back, though the intended covenants would not have extended to the particular incumbrance or defect by which the eviction was occasioned. This is the English law, according to which the criterion of the right to

equitable interference, is, incontestably, the execution of the conveyance; for it seems pretty clear, that the anonymous case in 2 *Ch. ca.* 19, in which the purchaser is said to have been relieved, on the foot of an eviction, after the conveyance was executed, is not entitled to a moment's consideration.   Not only is the authenticity of the report questionable, as not having been taken by the reporter himself, but the principle of the case has been repudiated by every writer since, and there is little doubt that it would be promptly overruled were the point again presented for decision in that country.   Yet that is the only case in the books which serves to give colour to the doctrine; for the decision in *Tourville* v. *Naish*, 3 *P. Wms.* 307, as well as the *dictum*, in 2 *Freem.* 106, had evidently no relation to the case of a conveyance executed.   This criterion seems, however, to have no place in our law, as regards detention: though it undoubtedly has, as regards recovery back.   *Steinhauer* v. *Witman*, 1 *Serg.* & *Rawle*, 483, and *Hart* v. *Porter*, 5 *Serg.* & *Rawle*, 201, were both cases of detention, after the acceptance of a conveyance: while *Dorsey* v. *Jackman*, 1 *Serg.* & *Rawle*, 42, was a case where recovery back, in the like circumstances, was denied. In the first of these cases, a faint effort was made by the *Chief Justice*, to found our practice on English authority, but in the second, he admitted that he came into the support of it with extreme reluctance; while Mr. *Justice Yeates* put it on the only ground capable of sustaining it—long and uninterrupted usage. It is useless now to inquire into its origin or effect, with a view to change or abolish it, as it has become too firmly fixed for that; but it seems proper to remark, that it produces here, where lands are sold on long credits, very nearly the same inconvenience as would be produced by a recovery back elsewhere; which, it has been said, would be a serious one, "as every contract, however bounded or guarded in its terms, would be liable to be opened at any distance of time." 1 *Fonb. B.* 1 *ch.* v. § 8, *note g.*   In fact there is no distinction in principle between them; and one is at a loss for the reason of Mr. *Justice Yeates'* alacrity in recognizing the principle of *Bree* v. *Holbeck*, *Doug.* 654, by which purchase money paid, may not be recovered back; and his hearty concurrence, at the same time, in the propriety of detaining it, when but secured.   But the greatest practical evil of the doctrine is, that it subjects the contract to the control of a jury, prone to forget, that to cut a man loose from his bargain for motives of humanity, is the rankest injustice; and for this, it would seem sound policy to extend it no further than it has already been carried.   That it may be qualified by circumstances, was directly affirmed in *Hart* v. *Porter*, in which it was said, that where a purchaser knows of a defect or incumbrance at the time of the bargain, without stipulating for a covenant or other security against it, he necessarily consents to take the risk of it on

(Lighty *v.* Shorb.).

himself. An intendment to that effect, is consistent not only with the reality of the transaction, but with the analogous principle of *Vane* v. *Lord Barnard*, *Gilb. Eq. Rep.* 6, in which the purchaser, having taken an agreement for a special covenant against a contingency that might never happen, was not allowed to detain the purchase money as an additional security, because his consent to rely on the covenant alone, was thought to be deducible from the very nature of the transaction. Is not his consent to bear a risk known to him at the time, and not provided against, equally deducible from the nature, of the transaction? Not only every scriviner but every purchaser, is aware of the value of a covenant, when a defect is known or suspected. But it seems to be the fact of knowledge, and not the omission or the exaction of a covenant, that is the more material consideration. Where the purchaser is aware of a flaw, and provides not against it, he takes the risk of it on himself; and where he does so provide, he is referred to the legal effect of his security, as in *Furhman* v. *Loudon*, 13 *Serg. & Rawle*, 386, which was, in principle the present case, unless the event covenanted against, has happened in the meantime, and then he is allowed to retain what would be immediately recoverable back, and this, to prevent circuity; as was done in *Christy* v. *Reynolds*, 16 *Serg. & Rawle*, 258. There the warranty was special, but broken by actual eviction, under the title of the vendor; consequently the money might have been recovered back the next instant; and the case, therefore, did not require a principle so broad as the one applied to it, which, in the case of a known defect, is to be taken with this limitation, that the contingency guarded against, has happened. *Poke* v. *Kelly*, 13 *Serg. & Rawle*, 165, which was the case of a known incumbrance, warranted against, and paid off by compulsion, falls short of the principle in its extreme breadth, when asserted in such a case, without reference to an actual breach of the covenant; and this qualification is actually consistent with the position assumed by my brother *Huston* in delivering the opinion of the Court in *Christy* v. *Reynolds*. But I am unable to concur in a *dictum* in that case, that the English law of vendors is inapplicable to this country. How different soever may be the English system of conveyancing as regards form, the principles of the contract of sale are the same every where, as regards the justice and merits of the transaction; to give effect to which, the conveyance is but an instrument, and its form a subordinate consideration. The result of our own cases, then, seems to be this. Where there was a known defect, but no covenant or fraud, the vendee can avail himself of nothing, being presumed to have been compensated for the risk in the collateral advantages of the bargain. But where there is in fact a covenant against a known defect, he shall not detain the purchase money, unless the covenant has been broken: in other words, he shall be

(Lighty *v.* Shorb.)

bound to perform his engagement, wherever his knowledge and the state of the facts continue to be the same they were at the time of the conveyance.     What remains, then, is to apply this principle to the case before us.     A recital in the patent gave notice, that the ownership of the land was in the wife of the patentee, who, after her death, conveyed it to two of his daughters and their husbands, who, in turn, conveyed to *Lighty*, the endorser of the plaintiff, giving him the bond of the patentee as a security for the title; and this bond was handed over to *Barnitz* and *Shorb* when *Lighty* conveyed to them.     It is impossible, after that, to doubt of their having had, not merely constructive, but actual notice of the defect in the title, and of there having been a mutual understanding, that the purchase money should not be detained as a security for it.     The mercantile character, too, of the security given for the purchase money—a draft of one of the partner vendees on the firm, at twenty-two days—sufficiently attests, that nothing but punctual and prompt payment was considered to stand with the contract.     The vendees have not been evicted, nor has the vendor broken his warranty; and yet without any intermediate change of circumstances for a pretext, the vendees refuse to pay at the time stipulated for it, with full knowledge of the facts, or even to restore the vendor to his possession; so that, unless he happens to be in a condition to do more than he covenanted to do, by purchasing the adverse claim, and presently making an indefeasible title, he is to lose his land and the price of it, while the vendees are cutting off the timber for their iron works, without having paid, or intending to pay, any one a shilling.     Such a purchase might readily be mistaken for a trick to get into possession.     Under the circumstances here, every principle of law and justice, entitled the plaintiff to a verdict.

Judgment reversed, and a *venire de novo* awarded.