McGIE (FITCH v.). See Case No. 4,835.

## Case No. 8,795a.

### McGILL v. JORDAN.

[18 Reporter, 642.] [1]

Circuit Court, E. D. Pennsylvania. Oct. 21, 1884.

ESTOPPEL BY DEED — AFTER-ACQUIRED TITLE — WARRANTY—INTENTION—MORTGAGE— LAND OFFICE TITLE.

1. Where one undertakes by deed to convey an indefeasible estate in fee-simple he will not be allowed to set up against his vendee, or one claiming under him, a subsequently acquired title.

2. This is the case even where there are no covenants of warranty, if the intention of the parties to the deed as gathered from the words thereof appears to be to convey the entire estate and not merely the estate which the grantor has then therein.

3. Where two tenants in common execute a mortgage and afterwards one of them conveys by the deed his share to the other. the words of the two deeds being apt to express a fee. the grantor and mortgagor will not be allowed to set up against one claiming through the mortgage a title obtained from the land office subsequently to the date of the mortgage.

Motion for judgment non obstante veredicto.

Ejectment. On the trial it appeared that the land in controversy was part of a larger tract known as the "Mount Holly Iron Works Estate," which the Farmers' and Mechanics' Bank in 1846 conveyed to Kropff, who was the plaintiff's grantor, and Geisse for $21,000; that Kropff and Geisse executed a purchase-money mortgage of the said estate to their vendor; that in 1848 Kropff obtained a warrant from the land office for the part in dispute in the present case, as land "unimproved and unclaimed by any other person;" subsequently, on October 28, 1848, Kropff conveyed "all his estate, right, title, and property in the 'Mount Holly Iron Works Estate,'" derived by the deed from the Farmers' and Mechanics' Bank, to Geisse; shortly after this a judgment was obtained on one of the purchase-money bonds secured by the mortgage, and the land sold by the sheriff, to whose vendee the defendants traced their title. The court reserved the question whether the plaintiff were not estopped by the acts of his grantor Kropff from setting up his title, and

subject to this reservation there was a verdict for the plaintiff.

John Ryon and Samuel Hepburn. Sr., for plaintiff.

Samuel Hepburn. Jr., and A. Sydney Biddle (with them, J. Rodman Paul), for defendant.

BUTLER, District Judge. The execution of the mortgage and the deed to Geisse are the acts relied upon to invoke the doctrine of estoppel. In Pennsylvania it is well settled that where one undertakes by deed to convey an indefeasible estate in fee-simple, he shall not thereafter be allowed to set up a subsequently acquired interest against his vendee or those claiming under him. The reason upon which this rule rests is obvious. Having induced the vendee to part with his money upon the assurance imported by his act, the vendor should not thereafter be allowed to deny its truth, but should be treated as acquiring the outstanding interest for the vendee's benefit. The rule has its foundation in equity, and does not depend upon covenants contained in the deed. The avoidance of circuity of action has little if anything to do with it; and much of the intricate learning of the common law found in the older cases, respecting estoppel by deed, has become unimportant, if it ever had a place in the jurisprudence of this state. If, by the terms of the conveyance, no matter by what name called, the vendee is justified in believing that the estate conveyed is a fee-simple, indefeasible, common justice requires that the vendor shall not thereafter be allowed to deny that he conveyed such an estate. Chief Justice Tilghman, as early as 1816, in McWilliams v. Nisly, 2 Serg. & R. 514, says: "The case stands thus: James McWilliams sells and conveys land to which he has no title, and afterwards acquires title, can his heirs recover against his grantee? It appears to me that, in such case, they would be estopped by their father's act from denying his title; and if there were occasion for further assurance equity would compel them to make it." The same thing, in effect, is repeated in Brown v. McCormick, 6 Watts, 60. In Tyson v. Passmore, 2 Barr [2 Pa. St.] 124, the doctrine was again applied. Here the purchaser's rights depended upon articles of agreement to convey. Ejectment was brought to enforce specific performance. Of course, no covenants for title were involved. Nevertheless, an after-acquired title to a part of the land, in which the defendant had no interest at the time of contracting, was held to inure to the plaintiff's benefit. Root v. Crock, 7 Barr [7 Pa. St.] 378; Steiner v. Baughman, 2 Jones [12 Pa. St.] 106; Clark v. Martin, 13 Wright [49 Pa. St.] 299, are to the same effect. These cases show that the application of the doctrine of estoppel by the courts of this state depends, not upon covenants in the conveyance, but upon the intention of the parties (as gathered from their language) to convey

[1] [Reprinted by permission.]

the entire estate in the land; and further show that no particular form of expression is necessary to indicate this intention. In Smith, Lead. Cas. p. 471, Judge Hare, in treating of the doctrine as understood and applied in this state, says: "In Pennsylvania, where covenants of general warranty are comparatively unknown, a conveyance is held to estop the grantor from setting up any interest which he may subsequently acquire in opposition to his own deed. Hence, while some of the decisions have been based on the idea that a specific covenant or recital is necessary to create an estoppel, there are others which go farther and take the ground that every grant carries with it, prima facie, a presumption that the intention was to confer a good title to the land, and preclude the grantor from relying on an after-acquired title, in derogation of his deed, which must prevail, unless there is something special and restrictive in the words employed, authorizing a narrower interpretation." The same learned author, when considering the doctrine of estoppel, without special reference to its administration by the courts of this state, says: "In a number of the more recent decisions it has been held that the question is one of intention; and while a warranty may be restricted by its own terms, or those of the deed in which it is inserted, a deed without warranty may operate as an estoppel, in order to prevent a failure of the purpose with which it was executed." The fair result of the more recent cases would seem to be that whenever the terms of the deed or of the covenants it contains show that it was meant to convey an absolute and indefeasible title, and not merely the interest which the grantor had at the time, it will pass every estate and interest which may vest in him subsequently, whether the warranty be general or special, or though it may contain no warranty at all. These decisions abandon the technical ground taken in the earlier cases, that the estoppel grows out of warranty, and rest it on the broader basis of giving effect to the intention of the parties as expressed in the deed. This is the doctrine of the federal courts, as well as of the courts of Pennsylvania, in which state the land in question is located. In Van Rensselaer v. Kearney, 11 How. [52 U. S.] 297, it was held, that "if a deed of conveyance, expressly or by implication, affirms that the grantor has and conveys a fee-simple in the land, his heirs are estopped from denying that he had the estate, and passed it to the grantee, and this may appear by any part of the deed, or by other writings referred to therein." It will be observed that, in this case, a tenant for life, merely, conveyed the land without any express covenants or recitals whatever. In French v. Spencer, 21 How. [62 U. S.] 228, it was decided that where a grantor expressly or impliedly sets forth that he is seised of an estate which he purports to convey, he and all claiming in privity with him are estopped to deny that he was so seised at the time he conveyed. Such we understand to be the doctrine of estoppel, as applicable to the case before us. As we have seen, Kropff and Geisse executed a defeasible deed or mortgage of the tract of land known as the "Mount Holly Iron Works Estate," conveying it to the bank as security for bonds given the latter for purchase-money; and Kropff, two years later, executed a deed conveying his undivided half part of the tract to Geisse. Do these acts estop him from setting up the title subsequently obtained from the state, against the defendant, claiming under the judgment afterwards obtained, and the sale thereon? That the language of the mortgage, and of the subsequent deed to Geisse, aptly describe and purport to convey a fee-simple in the land,—in other words, to convey the entire property, free of all claims or charges of every kind and from every source, is, we believe, clear. The words "grant, bargain, and sell" import the conveyance of a fee-simple, indefeasible, with special warranty. These words are found in the granting clause of each of the instruments referred to, and the language of the habendum in each, "to have and to hold to the grantee, his heirs and assigns forever," is consistent with this import, and inconsistent with any other. That the warranty is special is not important, as we have already stated. There is no implication from a vendee's acceptance of a special warranty that he takes the land subject to defects of title, or incumbrances created by others than his grantor. It is true, that if he fails to discover an existing defect or incumbrance of this description, before payment of the purchase-money, he may be without means of relief. But if the discovery be made before payment, he may set up the defect or incumbrance as failure of consideration, and successfully interpose it to an action for the purchase-money. This is well settled. Steinhauer v. Witman, 1 Serg. & R. 438; Roland v. Miller, 3 Watts & S. 393; Murphy v. Richardson, 4 Casey [28 Pa. St.] 292; Lighty v. Shorb, 3 Pen. & W. 447. It cannot be seriously doubted that the parties to each of the instruments referred to understood that the lands described were conveyed in fee-simple, free from charge or claim of every character. The reference to quit-rents and money due the commonwealth, found in old conveyances of the title, are deemed immaterial. They did not inform, nor tend to inform, the bank or Geisse, or the sheriff's vendee, of the continued existence of such incumbrances. The absence of reference to them in subsequent conveyances was sufficient to justify a conclusion that they had been discharged. Kropff's acts in conveying as he did were an implied declaration that no charges or incumbrances existed. The case of Skinner v. Shannon [unreported], cited by the plaintiff, has no application to the facts of this case. There the land was conveyed expressly subject to an incumbrance; the amount of which, the court says,

must be presumed to have been deducted from the purchase-money. The purchaser not only had notice of the incumbrance, but agreed to assume and pay it.

The plaintiff attaches importance to the fact that the sheriff's sale was not in pursuance of scire facias on the mortgage, but was under a judgment recovered on one of the bonds which the mortgage secured. In this, however, we cannot agree with him. Under the laws of this state the proceeding on the bond, and the sale in pursuance of it, discharged the mortgage. It was but another method of foreclosure; and the sale therefore transferred to the purchaser precisely what he would have taken if the creditor had proceeded by scire facias. A different view would deprive the creditor of a valuable part of his security. The purchaser took, therefore, the same estate that he would have taken if the mortgage had been an indefeasible deed, executed directly to him; and the consequences to Kropff are in all respects the same as if he had so executed it. But the result is not different if we look alone to the effect of Kropff's act in conveying the land to Geisse. The title of the sheriff's vendee is, of course, referrible to this deed, as well as to the mortgage. This latter deed, also, as we have seen, contained an implied assurance to Geisse and the sheriff's vendee that Kropff had at the time, and that he transferred, an indefeasible title in fee-simple. Judgment for the defendant, notwithstanding the verdict.