# Brown *against* M'Cormick.

When a person conveys land to which he has no title, but afterwards acquires title to it, he will not be permitted to claim in opposition to his deed, from the grantee, or any person claiming under him.

Bonds with a warrant of attorney to confess judgment, given for the purchase money of land, are but a personal security until judgment is entered upon them, and are not a lien upon the land sold.

ERROR to the common pleas of *Franklin* county.

This was an action of ejectment for fifty acres of land by David Brown against Robert M'Cormick. The facts are particularly stated by the court below in their charge to the jury, which was assigned for error.

Thompson, (president.) The plaintiff, to make out his title, has given in evidence a location in the name of Thomas Barnet, for three hundred acres adjoining George Goodwin, dated the 2d of February 1767. A survey upon it containing three hundred and eight acres and one hundred perches, made on the 1st of May 1769; this survey has been returned into the surveyor-general's office. The plaintiff's counsel then read in evidence a deed for the land contained in this survey, dated the 16th of November 1797, from Uriah Brown, David Brown and Mercer Brown to Robert M'Connel; it appears further, that on the same 16th of November 1797, Robert M'Connel gave his two bonds, each conditioned for the payment of 120 pounds, 9 shillings and 4 pence, to David Brown, one payable the 1st of November 1798, and the other payable the 1st of November 1799: another bond conditioned for the payment of a like sum to Uriah Brown, on the 1st of November 1800; and a fourth conditioned for the payment of a like sum on the 1st of November 1801, to Mercer Brown. · These are all judgment bonds, and amount together to 1285 dollars, the consideration mentioned in the deed from Uriah, David and Mercer Brown to R. M'Connel. Upon these bonds four judgments were entered upon the 22d of

November 1797; Nos. 106, 107, 108 and 109 of October term 1797. Afterwards to January term 1801, a *fieri facias* was issued on the judgment in favour of Uriah Brown, which was laid on the same land contained in the deed from the Browns to M'Connel.    To January term 1805, No. 47, a *venditioni exponas* was issued in the case, marked for the use of David Brown, by virtue of which the land was, on the 19th of February 1805, sold to David Brown for 310 dollars.    The sheriff's deed was made to him and acknowledged in open court on the 6th of April 1805.    To August term 1825, No. 132, an ejectment was brought by David Brown against Francis M'Connel, who, it seems, was a son of Robert M'Connel, for this tract of land.    On the 21st of August 1826, William Harvey and James M'Connel were added as co-defendants: William Harvey afterwards died; his death was suggested on the record, and afterwards, on the 21st of August 1827, judgment was entered against the other defendants, by *non sum informatus*.    As the representatives of Harvey were not brought on the record before the judgment was entered, it did not affect them.    The present suit was then brought to January term 1833, to recover from Robert M'Cormick, the present defendant, that part of the tract which was then in the possession of William Harvey.

From the evidence on the part of the defendant it appears, that an application was taken out in the name of Robert M'Conahey for three hundred acres, dated the 9th of January 1767, on which a survey was made on the ground at an early period; the exact date is not mentioned.    The survey was never regularly made out and returned into the surveyor-general's office.    It contains one hundred and one acres, thirty-one perches, and interferes with the survey in the name of Barret to the amount of fifty-seven acres, forty-five perches. This interference contains the land in dispute; it also interferes with the survey of Francis M'Connel, and with that in the name of George Goodwin.    It appears that Robert M'Connel claimed the survey in the name of R. M'Conahey as early as 1788; but how he claimed, does not appear.    On the 2d of January 1788 he and his wife conveyed the land contained in it to William Harvey, by a deed containing a covenant of seisin and of general warranty. This deed was recorded in book A, page 549, on the 2d of May 1788: it appears that there was a field cleared on the ground before this time, which contains about ten acres, and is marked on the plot with the title C.    Harvey went into possession in May 1788, and he and his heirs have held it ever since.    William Harvey died in 1809, leaving a son William, who died in 1826 or 1827, without issue, and a daughter, who is intermarried with M'Cormick, the defendant, who is now in possession.    There are two other small fields on the land in dispute in the possession of the defendant; one of them marked E, cleared within the last three or four years, and the other marked D, on the plot cleared ten or twelve years ago. This brings me to turn your attention to the points of law presented

for the consideration of the court by the counsel of the plaintiff. In answer to the first, second and third points, which all relate to the same subject, the court instructs you, that if you believe the evidence, this is a case of interfering surveys. In such cases the law adjudges the possession to be in him who has the best right, as the act of limitation has no operation against him, except his opponent take an adverse and exclusive possession. 2 *Serg. & Rawle* 439. In such a case, the party claiming the protection of the statute must show an actual, adverse, visible and notorious possession by inclosures or clearing and cultivation, and he is protected no further than such possession has continued for twenty-one years before the suit brought. In this case, if you believe the facts as I have stated them, the statute protects the defendant only so far as relates to the ten acre field, marked on the plot with the letter C, of which he and those under whom he claims, appear to have had possession ever since 1788. As to the other fields, if you believe the testimony, they have been cleared less than twenty-one years before this suit was brought: this being the case, the statute does not extend either to them or the woodland, though it may have been used for taking timber from it for firewood, fencing and the like.

The fourth point raises a question of much more importance. It appears in evidence in addition to what I have already stated, that on the 2d of October 1792, one John Brown made a deed to Robert M'Connel, conveying by the same courses, distances and boundaries as the lines of the survey in the name of M'Conahey, describing the land as one hundred and one acres and thirty-one perches, the exact quantity in that survey, but calling it a part of the tract surveyed for Goodwin on his warrant. It appears further that M'Connel, for this conveyance, gave his bond to David Brown for 50 pounds. This transaction would seem to indicate a desire, on the part of M'Connel, to make Harvey secure in the title which he had sold him to the land included in the same boundaries.

The plaintiff here claims under the sheriff's sale, upon the judgment against Robert M'Connel, and he has no other or better title than M'Connel had: on the day that the judgment was entered up, M'Connel, by his deed of 1788, duly recorded, had already conveyed the land in dispute to William Harvey. In the absence of proof to the contrary, it is to be intended, that one of the objects that M'Connel had in view, in making the purchase from the Browns, was, to confirm to Harvey the deed which he had made to him, of the land in question. When the plaintiff and his brothers, Uriah and Mercer Brown, conveyed to Robert M'Connel, they took the four judgment bonds I have mentioned, to secure the payment of the purchase money. These bonds were but a personal security until they were entered up. After the delivery of the deed, and before they were entered up, they had no lien whatever on the land. The bonds were not entered up until the sixth day after the

[Brown v. M'Cormick.]

deed was made. In the mean time M'Connel might have conveyed the property to any purchaser, who, if there was no fraud, would have held it clear of any claim for the money due on the bonds. He might have made a release of the right to the land in dispute, which he had acquired, to Harvey, in confirmation of his former deed, without any new consideration. I am therefore of opinion, upon the effect of the deed from Robert M'Connel to William Harvey of the 2d of January 1788, without saying whether it operated as a technical estoppel or not, that the legal effect of it was, to pass immediately to Harvey all the right which Robert M'Connel acquired to the land in dispute, by virtue of the deed from the plaintiff and Uriah and Mercer Brown; that when the judgment, on which the sheriff's sale was made, was entered up, M'Connel had no interest in the land, to be bound by it, and that consequently the plaintiff cannot recover any part of the land in question; and your verdict must be given for the defendant.

Exception on part of the plaintiff.

Error assigned.

The court erred in charging the jury that the legal effect of the deed from Robert M'Connel to William Harvey, of the 2d of January 1788, was to pass immediately to Harvey all the right which Robert M'Connel acquired to the land by virtue of the deed from the plaintiff and Uriah and Mercer Brown, that when the judgment on which the sheriff's sale was made was entered up, M'Connel had no interest in the land to be bound by it, and that consequently the plaintiff cannot recover any part of the land in question; and your verdict must be for the defendant.

*J. A. Fisher*, for plaintiff in error.
*Dunlop*, for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—The facts, so far as they are material, are these. On the 2d of January 1788, Robert M'Connel, who claimed the land in dispute, under a survey, in the name of Robert M'Conahey, with his wife, made a conveyance of the same, with a covenant of seisin and general warranty, to William Harvey. On the 16th of November 1797, Uriah Brown, David Brown, and Mercer Brown, under whom the plaintiff's claim, made a deed, including the same premises, to Robert M'Connel, the grantor above named. To secure the payment of the consideration, on the same day, M'Connel executed four bonds, with warrants of attorney to confess judgment, to David Brown, Uriah Brown, and Mercer Brown, severally, on which, judgments were entered, on the 22d of November 1797. A *venditioni exponas* issued to January term 1805, by virtue of which, the land was sold to David Brown, who received a deed from the sheriff, the 6th of April 1805. The first question is, as to the legal effect of the deeds, which the court decided was to pass immedi-

ately to Harvey, all the right which Robert M'Connel acquired in the land by virtue of the deed, from the Browns to him. And this is a principle too well settled to admit of dispute. When a person conveys land, in which he has no interest at the time, but afterwards acquires a title to the same land, he will not be permitted to claim in opposition to his deed, from the grantee, or any person claiming title from the grantee. 12 *Johns. Rep.* 207; 11 *Johns. Rep.* 91; *Co. Lit.* 265. The operation of the principle is, that immediately on the execution of the deed of the 10th of November 1797, from David Brown and others, to Robert M'Connel, it enured to the benefit of William Harvey, the grantee of the land, by virtue of the previous deed of the 2d of January 1788. At that period, therefore, by operation of law, William Harvey was the owner of the premises in question. And the legal effect will be the same, whatever may have been the intention of M'Connel in making the purchase from Brown, although the presumption undoubtedly is, that it was intended in good faith, to carry into effect his sale to William Harvey. But it is alleged, that the judgment on which the plaintiffs claim, being for the purchase money, although not entered until six days after the conveyance, *is a lien on the property, conveyed* by Brown to M'Connel. But bonds, with a warrant of attorney to confess judgment, although given to secure the purchase money, are but a personal security, until judgment entered, and consequently after the delivery of the deed, and before the judgment had, the grantor had no lien. In the intermediate time, it was in the power of M'Connel to make any disposition of the land he pleased, either by sale, or by subjecting the premises to the lien of other incumbrances. And this consequence, the vendor can only avoid, by entering his judgment the same day the deed is delivered, or by taking a mortgage on the property sold, for security of the purchase money. The counsel for the plaintiff in error, relies on Chew *v.* Barnitz, 11 *Serg. & Rawle* 399; but that case merely decides the general principle that the purchaser of an *equitable title*, takes it subject to all the countervailing equities to which it was subject in the hands of the person from whom he purchased. But here, by the conveyance from Brown to M'Connel, M'Connel acquires a legal title to the premises, without the lien of any incumbrance whatever, whether legal or equitable, which, by operation of law, immediately passes to his grantee.

Judgment affirmed.