Judge Hitchcock
delivered the opinion of the court:
On the trial of this case an objection was made to the deed ■from M. and A. Wilcox and their wives to Hurd and wife, on the ground' that no consideration passed at the time the deed was ■executed. From the circumstances attending the transaction, it is clear that the object was to transfer this land to the women, and that Hurd was made use of as the instrument through whom this might be done. But the testimony in the case shows that M. and A. Wilcox had received and made use of the separate property ■of their wives for their own purposes, and it was not. improper for them to make this settlement upon them, especially as there is no evidence of any design to defraud creditors. If there was anything of this kind, it might make a proper case for the interference of a court of equity.
The facts of the case show that the whole 4,000 acres of •land, including the land in controversy, was mortgaged to the ^grantees of the defendants in April, 1823. The '200 acres were mortgaged to the lessor of the plaintiff in the month of November of the same year. Both mortgage deeds were executed by Moses and Aaron and Huldah and Mabel Wilcox. The mortgagors in the first mortgage on July 17, 1824, released all their interest in the 200 acres in controversy to the “two women.
The first question presented for consideration, under this state of facts, is as to the effect of this release.
If a mortgagor is considered as having the legal interest in the lands mortgaged' until the condition broken, and that he is to be so considered as to all the world except the mortgagee, has been ■ repeatedly decided by this court, then upon the performance of “the condition his estate becomes indefeasible. If the condition of defeasance be the payment of money, such payment destroys the interest of the mortgagee in the lands, and such payment may be proven by parol. By the act of March 12, 1836, “ to amend the act entitled an act to provide for the proof and acknowledgment of deeds,” etc. (34 Ohio L. 19), it is provided that an entry of satisfaction by the mortgagee upon the mortgage, or upon the record •of the mortgage, shall operate as a release of the same to any person who may be entitled to a release. A deed of release, executed *230 by the mortgagee, of all his interest in the mortgaged premises, must be at least equivalent to the performance of the condition. As the payment of the money secured by a mortgage docs not-vest a new estate in the mortgagor, but merely extinguishes the lien of the mortgagee, so a release of the premises by the mortgagee to the mortgagor vests no new estate. The release operates to extinguish the claim of the mortgagee, and the mortgagor is in under his original title — not under a title acquired by the release. A mortgagee has not, even after the condition of defeasance has been broken, such an interest in the mortgaged premises that he can convey by release, or other mode of conveyance, to a third person, until the equity of redemption is foreclosed, unless he, at the same time, transfers the debt secured by the mortgage. Neither can lands in the hands of the mortgagee be sold on .execution, until the equity of redemption is-foreclosed. 4 Johns. 41; 5 Johns. Ch. 570. If we are right in this, then it follows the release to Hannah and Mabel Wilcox operates as an extinguishment of the first mortgage, so far as the' same was operative upon the 200 acres of land released.
*They acquired no new title by this release, but held the lands in the same manner, and under the same title, as before the execution of this mortgage, and entirely divested of its lien ; still the subsequent mortgage to Hill was outstanding. At the time it was executed, the mortgagors had such an interest in the land as could be pledged. It operated as a lien as perfectly as the prior mortgage, except that it was junior in point of time. The former mortgage having been extinguished, this attached as a lien upon the land, as it would have done had that never been executed, and the equity of redemption having been foreclosed, the mortgagee is vested with the legal title.
But if we are wrong in this, and these women are to be considered as having acquired a new title or estate by the release, then the question arises,- whether they, or those claiming under them, are not estopped by the covenants in their deed from setting up this title against the lessor of the plaintiff. • At the time the deed to the lessor of the plaintiff was executed, they were femes covert, and as such could not be bound' by their contracts, except so far' as expressly authorized by statute. In this, as in most, if not all, the states of the Union, femes covert are allowed to convey their real estate by deed, their husbands uniting in the conveyance, *231 What in England can be done only by fine, may, in this country,, be done by deed thus executed. By our law, however, in order to give the deed validity, the wife must be examined separate and apart from her husband, and, after such separate examination» must acknowledge the deed. This separate examination seems to be substituted for the fine; still, although in England a feme covert can, by fine, enter into covenants, which will subject her to actions for damages, yet we are not prepared to say, that under our system, she is bound to this extent by her covenants in a deed of conveyance. On the contrary, we incline to the opinion that she is not thus bound. It seems to be holden otherwise, however, in Yirginia. In the case of Nelson v. Harwood, 3 Call, 394, it was decided, that if a feme covert was privily examined, her covenant in a deed for further assurance is obligatory, and the specific performance of such covenant was decreed. Notwithstanding this case, however, we entertain the opinion that full effect is given' to the statute providing “ for th'e proof, acknowledgment, and recording of deeds,” etc., 29 Ohio L. 346, when we hold that a deed executed by a feme covert, in conformity with that act, operates to convey the estate contemplated.
*It is not necessary, however, definitely to settle this question, nor do we intend to do it; for it does not follow, because-a feme covert could not be, made liable in damages for the breach of her covenant of warranty, that therefore such covenants will not operate as an estoppel. We are aware, that in the ease of Jackson v. Vanderhayden, 17 Johns. 167, Judge Spencer, in delivering the opinion of the court, says, that a deed executed by a feme covert, in conjunction with her husband, containing covenants of general warranty, does not operate as an estoppel to her subsequently acquired interest in the same lands. This, however, is the only American case we have found sustaining the same doctrine. On the contrary, in the case of Collard and another v. Swan and wife, 7 Mass. 291, it is expressly decided, that where a wife joins with her husband in the conveyance of her lands with covenants of warranty, the land passes by the deed, and the wife is estopped by her covenants, although she is not answerable. for any breach of them. The same principle is'recognized in the case of Fowler v. Spencer, 7 Mass. 21. Such seems also to be the rule of decision-in Kentucky. 4 Bibb, 436.
These decisions may not seem to be founded upon the reasons ■ *232 which are usually assigned, why the covenants in a deed should operate by way of estoppel, that is, to prevent circuity of actions, still they seem, to us to be reasonable, and such as tend to the furtherance of justice; and when a married woman undertakes, in conjunction with her husband, to convey her land with covenants of warranty, it is sufficient to protect her from the payment of damages for the breach of those covenants; for all other purposes they should be held operative. If, then, after the execution of the deed to the lessor of the plaintiff, Huldah and Mabel Wilcox acquired title to the premises in controversy, that title inured to tbe'benefit of the lessor of the plaintiff, and neither they, nor those claiming under them, shall be permitted to defeat the plaintiff by setting up this after-acquired title. Motion for new trial overruled.