JOHN DOE, on the demise of WILLIAM POTTS v. RICHARD ROE, casual ejector, and JOSEPH DOWDALL, tenant in possession.

ALTHOUGH the doctrine of estoppel has often been denounced as odious, and declared to be unworthy of recognition by the courts, yet it would

47

seem, when properly understood, to be founded on such principles of morality and justice, as commend them to our best conscience, because its proper application only debars the averment of the truth, in a case where such an averment would convict the party of a previous falsehood, and where to permit it, would be to allow him to deny a previous affirmation upon the faith of which other persons have been induced to deal with him. The purpose and intent of it is to prevent fraud and falsehood, and it only closes the mouth of a party, when to let him speak, would be contrary to honesty and good conscience.

Estoppels are said to be of two kinds, the one personal in its character, operating as a personal rebutter and preventing the grantor and those claiming under him, from asserting title, or contradicting the intent and effect of his deed; the other is of larger scope, for while it carries with it all the qualities and attributes of the former, it also possesses the additional function of operating an actual transfer of an after acquired estate. Mere grants, releases, or quit claims, however, do not possess this function, nor were conveyances under the statute of uses held to have this operation; but the doctrine when applied to deeds of bargain and sale, must be confined to that description of conveyance strictly and properly so defined, that is to say, to naked deeds of bargain and sale. For it is well settled that if it is manifest on the face of the conveyance, either by recital, admission, covenant, or in any other way, that the parties actually intended to convey and receive the identical estate and interest which is the subject matter purporting to be conveyed by the instrument, they shall be held estopped from denying the operation of the deed according to its manifest intent.

Where one who has no title conveys land with warranty, and afterward acquires title, and conveys to another, the second grantee is estopped to say that the grantor was not seized at the time of the first conveyance. And where both parties claim under the same person, they are privies in estate, and cannot as such, deny the title of the grantor at the time of the first conveyance; and the estoppel working upon the estate, binds both parties and privies. It adheres to the land, is transmitted with the estate, it becomes a muniment of title, and all who afterward acquire, take it subject to the burden which the existence of the fact imposes on it.

THIS was an action of ejectment for a house and lot in the city of Wilmington, and case stated, argued at the May Term, 1866. John Menough was seized in fee of the premises in question, and on the 10th of September, 1849, by deed of himself and wife, conveyed them in fee to William Boyd, of Philadelphia, with covenants of warranty, and which was duly recorded at New Castle on the 19th of November following, and on the 26th day of March, 1850, John Menough and his wife, by deed

of bargain and sale, conveyed all their estate, right, title, interest, property, claim and demand whatsoever in law or equity of, in, to or out of the same land and premises to Joseph Dowdall, the tenant in possession, in fee simple with covenants of warranty that he, John Menough, was lawfully seized in fee thereof, that the said premises were free from incumbrance, and that he had good right to sell and convey the same to him, and that he and his heirs, executors and administrators, would and should warrant and defend the same to him, his heirs and assigns forever against the lawful demands of all persons claiming or to claim the same or any part thereof by, from or under them or any of them, and which deed was also duly recorded at New Castle on the 5th of August following, and under which Dowdall went at once into the possession of the premises, and had ever since received the rents and profits of them. The deed to him also contained a recital that the premises were part of a larger parcel of land which Samuel Woolston and wife conveyed to John Menough, August 27th, 1847. On the 5th of April, 1851, William S. Boyd and Elizabeth his wife re-conveyed to John Menough the premises which Menough and wife conveyed to Boyd on the 19th of September 1849, (it being the same lot of land which Menough and wife conveyed to Dowdall on the 26th of March, 1850,) and the deed was entered for record on the 9th day of December, 1851. On the 7th day of June, 1853, John Menough and wife executed two mortgages, one for one thousand dollars, and the other for two thousand dollars, and thereby mortgaged two messuages and lots of ground, one of which lots was the same premises conveyed by the deed of William S. Boyd to John Menough, and the same which the said John Menough had theretofore conveyed to Joseph Dowdall, and the other of the said messuages and lots was subject to a prior mortgage, one of which mortgages was given to George W. Hawley and Thomas P. Hawley of Chester county, Pennsylvania, which was afterward assigned to Caleb Strode, and the other of the said mortgages was in favor of William

Potts.   These mortgages recited the title of the last of said premises as the same which William S. Boyd and wife by their deed of April 5th, 1851 had conveyed to the said John Menough.   The interest on both of the mortgages was paid by John Menough until August and December 1857, and at the November Term 1859 judgment was obtained on the *scire facias* issued upon the mortgage then held by Caleb Strode, against John Menough and wife, and upon a *levari facias* to the May Term 1860, the said premises were sold and William Potts, the lessor of the plaintiff, became the purchaser and holds the deed therefor, executed by Levi B. Moore, Sheriff. The other messuage and lot of land mentioned in the said mortgages having been sold under a prior mortgage, there remained a surplus of money arising from the sale under the first mortgage out of which $279.19 was applied to the one thousand dollar mortgage held by Caleb Strode, and $558.33 was applied to the two thousand dollar mortgage held by William Potts.   The purchase money arising from the sale of the premises in dispute on the mortgage of Caleb Strode was only a nominal sum. Each and all of the deeds and mortgages herein referred to, to be considered and taken to be part and parcel of the case stated.   The question was whether the plaintiff was entitled to recover the premises in question, mentioned in the demise laid in his declaration ?   If the court should be of that opinion, judgment to be entered generally for him; but if not, for the defendant.

*G. B. Rodney, for the plaintiff.*   It will be contended on the other side that the plaintiff is estopped from setting up a title to the premises in question by the deed and the warranty which it contains from John Menough and wife to Dowdall, the defendant, but he would proceed to show that such could not be the effect of such a deed and warranty. Estoppels were of three kinds; by matter of record, by matter in writing and by matter in *pais*; and it was only necessary in this case to turn to Coke for the definition of the second, by matter in writing, which he defines to

be by deed indented, by making acquittance by deed indented, or deed poll, and by defeasance by deed indented, or deed poll. *Co. Lit.* 352 *a.* At one time it was held in some of the States of the Union, and such was formerly the case in the State of New York, that any warranty in any kind of a deed, would operate in a case like the present, to estop the plaintiff from setting up a claim of title to the premises in dispute. *Jackson v. Murray,* 12 *Johns.* 201. *Jackson v. Wright,* 14 *Johns.* 193. But later cases have settled it otherwise. There was no doubt a feoffment, or a fine, or a fine and recovery always had the effect to estop the party making it from setting up any after acquired title in contravention of it, but that was owing entirely to the peculiar force and practical effect which the open and formal ceremony of livery of seizin always imparted to such conveyances. Such, however, was not the case with regard to our modern deeds of conveyance, such as a deed of bargain and sale, or of release, which existed only in grant, and were executed without any such formality. But where such a conveyance as he had just mentioned, contained a general warranty of title against all persons, it would operate to estop and conclude the grantor from setting up a subsequently acquired title or claim to the premises against it. 4 *Kent's Com.* 98. 1 *Shep. Touch.* 204. *Perk. on the Laws of Eng.* 30. *Hob.* 45. *Co. Lit.* 265 a. But where the warranty was special, and not general, which was the case here, it could not have the effect to conclude the grantor, and constitut d no estoppel in such a case against him. *Comstock v. Smith,* 13 *Pick.* 46. *Blanchard v. Brooks,* 12 *Pick.* 46. *Jackson v. Bradford,* 4 *Wend.* 619. *Jackson v. Winslow,* 9 *Cow.* 1. *Jackson v. Hubbel,* 1 *Cow.* 613. *Rawle on Cov. for Tit.* 402, 455. 22 *E. C. L. R.* 128. *Smith's Ld. Ca.* 30 *Law Libr.* 417.

*Higgins, for the defendant.* Could the mortgagee in this case have had any other or better title or estate in the premises in question, than Menough, the mortgagor, had

at the time he mortgaged them to him? Or could the plaintiff in this action have purchased or acquired under the mortgage any better title or larger estate in the premises than Menough had in them at the time of executing the mortgage? If Menough was, or would have been, estopped at the date of the mortgage from setting up against his deed of the 26th of March, 1850 to Dowdall, the defendant, his subsequently acquired title under the reconveyance of the premises to him by the deed of Boyd and wife of the 5th of April, 1851, then the purchaser under the mortgage from Menough and wife to G. W. and T. P. Hawley, Potts the plaintiff in the action, would also be estopped from setting up that subsequently acquired title against the deed and title of Dowdall, the defendant. Because the obligation created by estoppel not only bound the party making it, but all persons privy to him; privies in blood, privies in estate, privies in law were all bound by, and might take advantage of, an estoppel. *Co. Lit.* 352. *b.* *Rawle on Cov. for Tit.* 427. *Douglass v. Scott,* 5 *Ohio* 198, *Simmons v. Logan,* 1 *Harr.* 111. *Inskiep v. Shields,* 4 *Harr.* 347. *Carver v. Jackson,* 4 *Pet.* 83. *Soames v. Skinner,* 3 *Pick.* 61. *Jarvis v. Aiken,* 22 *Verm.* 639. *Jackson v. Waloron,* 13 *Wendl.* 189. But a covenant need not be a covenant of general warranty, for it would work an estoppel without being general, to the extent of its terms. 2 *Washb. on Real Prop.* 475. Where the grant is of a special interest in the land, the covenant of warranty is co-extensive with that interest, or the estate granted, but extends no further, and this principle was ruled in the case of *Comstock v. Smith,* 13 *Pick.* 116, cited on the other side. *White v. Patten,* 24 *Pick.* 324. *Fairbanks v. Williamson,* 7 *Greenl. Rep.* 96. *Ford's Lessee v. Hays et al.* 1 *Harr.* 48. *Simmons v. Logan,* 1 *Harr.* 111. Where it distinctly appears in the conveyance, either by a recital, a covenant, an admission, or otherwise, that the parties actually intended to convey and receive reciprocally a certain estate, they have been held to be estopped from denying the operation of the

deed according to such intent.    *Rawle on Cov. for Tit.* 407.
*Goodtitle v. Bailey, Cowp.* 559.    *Inskeip v. Shields, et al.* 4
*Harr.* 345.    *Van Renssalaer v. Kearney,* 11 *How.* 323.
But the rule had been carried further and it was now
established that where the grantor sets forth in the con-
veyance by averment or recital that he is seized of a par-
ticular estate in the premises, and which estate the deed
purports to convey, the grantor and all persons in privity
with him, shall be estopped from ever afterward deny-
ing that he was so seized and possessed at the time of
making the conveyance.    *Lessee of French & Wife v.
Spencer,* 21 *How.* 236.    *Duchess of Kingston's Case, Smith's
Ld. Ca.* 34 *Law Libr.* 455.    2 *Washb. on Real Prop.* 471.
A recital in a deed also binds the parties and estops the
grantor from denying the title recited and admitted in
the deed.    *Inskeip v. Shields et al.* 4 *Harr.* 345.    *Draper v.
Draper,* 5 *Harr.* 358.

*Harrington,* for the same, cited *Inskeip v. Shields et al.* 4
*Harr.* 345, for a definition at the present day of the legal
signification of the technical term estoppel, which now
had a more enlarged and liberal construction than it
received in the time of Lord Coke.

*Rodney* replied, and cited *Rawle on Cov. for Tit.* 335.

*Gilpin, C. J.,* delivered the opinion of the court.    The
modern doctrine of estoppel, resulting from the covenant
of warranty, as at present recognized and enforced in
the courts of this country, may be said to be mainly
of American growth.

The ancient common law doctrine of warranty, finds
its origin in the feudal constitution and tenures; and the
obligation which they imposed, was created without any
express covenant to that effect between the Lord of the
fee and his vassal.    By that constitution the Lord was
bound to protect and defend the fee, which his vassal
had derived from him; and in case he failed to do so,

and the vassal was evicted, the Lord was bound to give him another feud of equal value as a recompense or satisfaction for the one which he had lost. And this obligation descended upon the heir of the grantor, so long as he had any lands from his ancestor, to answer the claim of the vassal.

And subsequently when a deed of feoffment accompanied the gift, the word of feoffment " *dedi* " was construed to imply a warranty of the land ; and sometimes, though it is supposed but rarely, the deed contained an express warranty of the estate. It is to these several kinds of warranty, and the doctrine of estoppel growing out of them, that the learning to be found in Lord Coke's institutes properly applies. Covenants for title, as they are called, were unknown in his day. Lord Coke died in the year 1634. And these covenants, five in number,—of seizin, of right to convey, for quiet enjoyment, against incumbrances, and for further assurance, which were invented by Sir Orlando Bridgeman, during his practice, but after the death of Lord Coke, were probably introduced by him into use towards the close of the protectorate; for, Sir Orlando Bridgeman came to the bar in 1632, was appointed by Charles II on his restoration, Chief Justice of the Common Pleas in 1660, was made Lord Keeper of the Great Seal in 1667, and died in 1674. So that, it is quite clear, those covenants for title, invented at a time of insecurity and revolutionary change, came into general use in the mother country in the latter half of the seventeenth century, and that in fact they very soon became, in a great measure, a substitute for the old modes and forms of warranty, whether express or implied, and were brought over to this country by our English ancestors. They also brought over with them, another covenant of a mixed character analogous to the ancient express warranty, but more comprehensive in its scope, which in practice has become our great covenant for title. This is our covenant of warranty. *Humphres on Real Property. Rawle on Covenants for Title.*

It is not my purpose to enter into the many refinements and subtilties which confuse and obscure the old law of warranty, rebutter and estoppel; nor shall I attempt to explain or reconcile the conflicting decisions on this subject, either ancient or modern. Lord Coke in commenting on the 667 Sec. of Litt. says, " it is called an estoppel or conclusion, because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth, and Littleton's case here proveth this description." 2 *Coke Litt.* 352 a. Mr. Butler in his comments on this passage says, the reasons why estoppels are allowed seem to be these—" no man ought to allege anything but the truth for his defence, and what he has alleged once is to be presumed true, and therefore he ought not to be contradicted " * * * * * " that some evidence should be allowed of so high and conclusive a nature as to admit of no contradictory proof," *note to Co. Litt.* 352 *a. Rawle on Covenants for Title,* 319. In other words, it is but reasonable that a man should be estopped by his own deed to aver or prove anything contrary to that which he has once solemnly alleged under seal.

And, although this doctrine has often been denounced as odious, and declared to be unworthy of recognition by the courts, yet it would seem, when properly understood, to be founded upon such principles of morality and justice as commend themselves to our best conscience. Because its proper application only debars the averment of the truth, in a case where such an averment would convict the party of a previous falsehood, and where to permit it would be to allow him to deny a previous affirmation, upon the faith of which, other persons had been induced to deal with him. The very purpose and intent of the doctrine, when properly understood, is to prevent fraud and falsehood; and it only closes the mouth of a party, when to let him speak would be contrary to honesty and good conscience. Estoppels are said to be of two kinds—the one personal in its charac-

ter, operating as a personal rebutter and preventing the
grantor, and those claiming under him, from asserting
title, or contradicting the intent and effect of his deed,
which Lord Coke calls a " kind of estoppel;" the other,
however, is of larger scope, for whilst it carries with it
all the qualities and attributes of the former, it also pos-
sesses the additional function of operating an actual trans-
fer of an after acquired estate. "The interest when it
accrues feeds the estoppels." *Doe* v. *Oliver et al.* 5 *M. &
Ryl.* 202 *S. C.* 2 *Smith's Leading Cases* 417. *Helps* v. *Here-
ford.* 2 *Barn. & Ald.* 242. *Shep. Touch.* 204 (*margin.*)
According to the doctrine of the English cases the latter
effect was confined to feoffments, fines, recoveries and
leases Neither can mere grants, releases or quit claims
be said to possess the high function of transferring an
after acquired interest. Nor, indeed, were conveyances
under the statute of uses, held to have this operation.
But this doctrine when applied to deeds of bargain and
sale, must be confined to that description of conveyance
strictly and properly so defined, that is, to naked deeds of
bargain and sale. For it is well settled by numerous
authorities, that if it is manifest on the face of the con-
veyance, either by recital, admission, covenant, or in any
other way, that the parties actually intended to convey
and receive the identical estate and interest which is
the subject matter purporting to be conveyed by the in-
strument, they shall be held estopped from denying the
operation of the deed according to its manifest intent.
*Goodtitle* v. *Bailey, Cowper* 559. *Bensley* v. *Burdon,* 2 *Sim.
& Stee.* 524. *Marchant* v. *Errington,* 8 *Scott* 210. *Anandale*
v. *Harris,* 2 *P. Wm.* 432. *Sheely* v, *Wright, Willes Rep.* 9.
*Trevivan* v. *Lawrence,* 1 *Salk.* 276. *Penrose* v. *Griffith,*
4 *Binn.* 231. *Denn* v. *Cornell,* 3 *Johns. Cases,* 174. 8 *Cow.*
586. *Carver* v. *Astor,* 4 *Peters* 83--86. *Root* v. *Crock,*
7. *Barr* 380. *Kinsman* v. *Lomis,* 11 *Ohio* 478. *Van Rens-
selaer* v *Kearney,* 11 *Howard.* *Bensley* v. *Burdon,* was a
case of *recital* in the deed of the grantor, that he was en-
titled to a remainder in fee expectant on the determina-

tion of a life estate, when in fact he had no interest in the premises at the time, but afterward having acquired an estate for life in a part of them, he conveyed the same to the defendant, and it was held by the Vice Chancellor that the grantor having averred (by recital) in the deed that he was seized of a remainder in fee, he was estopped from setting up that he was not so seized at the time of the grant, and further that the estoppel ran with the land and bound not only the grantor but all claiming under him. This judgment was afterward affirmed by the Lord Chancellor who put his decision on the ground that the *recital* of the interest of the grantor in the premises, was an averment of a particular fact by which the defendant was concluded. *Marchant v. Errington* was the case of a *recital*, and it recognizes the same principle, although the estoppel was held by Lord Tindall not to apply, for the reason that there was no privity in estate between the plaintiff and defendant *Jackson ex dem. Munroe v. Parkhurst, et al. 9 Wend.* 209, was a case of recital, and the decision accords with the cases just mentioned.

The doctrine that a solemn *recital or admission* under seal concludes both parties and privies, seems to be fully sustained by the cases of *Bowman v. Taylor* 2 *Ad. & Ell.* 278. *Lainson v. Tremere,* 1 *Ad. & Ell.* 792. *Hill v. Manchester & Salford Waterworks Co.,* 2 *Barn. & Adol.* 244. *Inskeip v. Shield et al.* 4 *Harrington* 345. *Jefferson v. Howell,* 1 *Houston* 183. *Van Rensselaer v. Kearney,* 11 *Howard* 325, and the cases of *Bensley v. Burdon; Monroe v. Parkhurst et al.* and *Merchant v. Errington* above cited. In the case of *Fairbanks v. Williams,* 7 *Greenleaf* 96, there was no covenant for title, properly so called, the covenant of the grantor being simply, that neither himself, his heirs or assigns would ever make any claim to the premises; and yet the court held that this covenant operated as an estoppel, not only upon the grantor, but upon all claiming under him, from setting up an after acquired title to the premises against the grantor or those in privity with him.

I am aware that the case of *Fairbanks v. Williams* has

been shaken, if not overruled by *Pike v. Galvin*, 29 *Maine* 185 ; and yet upon principle, as well as authority, I think the former is the sounder decision of the two. That decision had been recognized as sound law in Maine and elsewhere for more than twenty years. It is in perfect harmony with principles well settled in the courts of other New England States. It is cited and approved in *White v. Patten*, 24 *Pick.* 324, in *Trull v. Eastman*, 3 *Metcalf* 121, and in *Van Rensselaer v. Kearney*, 11 *Howard* 297. Mr. Rawle, the learned author of the treatise on the law of covenants for title, in his note on the case of *Pike v. Galvin* remarks that it is difficult to support the authority of this case upon the principles so well settled in New England. *See* also the dissenting opinion of *Wells, J.*, published in 30 *Maine.* In the case of *Trull v. Eastman* the words of non-claim were substantially, if not literally, the same as those contained in *Fairbanks v. Williams* ; and yet, the court held that they amounted to a covenant real running with the land, and were in effect a warranty that the grantor would not, and that his heirs and assigns should not, thereafter. claim the premises; and that, although the grantor or releasor had not then a present right, yet the subsequent acquisition of it, should inure to the use of the grantee. And the learned Judge who delivered the opinion of the Court, remarked, "there is nothing to the contrary in the case of *Comstock v. Smith*, 13 *Pick.* 116." The case in 13 *Pick.* 116, is materially different from this, being in effect against and *quit claim* of all "right, title, claim and demand" in and to the premises, and not of the land itself, or any particular estate in the land ; and therefore, the warranty was held to be restricted in its scope, and to apply only to the estate and interest then vested in the grantor. The same general remarks apply with equal force to the case of *Blanchard v. Brooks*, 12 *Pick.* 67. That was a case in which the grantor bargained and sold all his *right, title and interest,* and the recitals show that in a part of the premises, he had but a contingent remainder, so that the extent of the estate and interest which he had in

the premises, was disclosed by the recital contained in the deed, and it was thus manifest that the conveyance was fully satisfied by applying the warranty to the then vested interest.    And these cases, as well as others of their class, are clearly distinguishable from cases in which the grantor undertakes to convey the land itself, or the very estate which is the subject of the instrument of conveyance.    It is certainly a matter of some difficulty to comprehend the wisdom of the distinction which is to be found in the books, between covenants and admission, which operating by way of personal *rebutter*, prevent the grantor and all others claiming under him, from setting up the after acquired title,—and covenants which operating by way of *estoppel* in the technical and absolute sense of that term, actually transfer the after acquired title.    This distinction, however, so far as concerns the case now in hand, seems to be of no practical importance, as the result according to either theory, must be substantially the same.    Because if it operates by way of personal rebutter, then the only person who has, as it were, a better title, is under such a legal disability as to preclude him from asserting his claim to the estate : and, in either case, the grantee, or person in whose favor the rebutter operates, is equally secured in his possession.    But the safer doctrine, and that which, in our judgment, is fully sustained by the weight of the American authorities is, that the covenant of warranty operates as an estoppel in the absolute sense of that term, so as to transfer and pass the after acquired estate.    The authorities are full and conclusive on this point.

Where one who has no title conveys land with warranty, and afterward acquires title, and conveys to another, the second grantee is estopped to say that the grantor was not seized at the time of the first conveyance.    And where both parties claim under the same person they are privies in estate, and can not, as such, deny the title of the grantor at the time of the first conveyance ; and the estoppel working upon the estate, binds both parties and privies. In the language of the court in the case of *Douglass v. Scott*,

" the obligation created by the estoppel, not only binds the parties making it, but all persons privy to him; the legal representatives of the party,—those who stand in his situation by act of law,—and all those who take his estate by contract stand in his stead, and subject to all the consequences which accrue to him. It adheres to the land, is transmitted with the estate, it becomes a muniment of title, and all who afterward acquire, take it subject to the burden which the existence of the fact imposes on it." *Douglass v. Scott,* 5 *Ohio* 198. *Hill v. West,* 8 *Ohio* 222. *Lawry v. Williams,* 1 *Shep.* 281. *Murphy v. Burnett,* 2 *Murphy* 251. *White v. Patten,* 24 *Pick.* 324. *Gre·n v. Clark,* 13 *Verm.* 158. *Massie v. Sebastian,* 4 *Bibb.* 436. *Ward v. Williard,* 13 *New Hampshi re*389. *Dudey v. Cadwell,* 19 *Connect.* 227. *Brown v. McCormick,* 6 *Watts* 64. *McCall v. Coov·r,* 4 *Watts v. Serg.* 161. *Root v. Crock.* 7 *Barr* 380. *Shaw v. Galbreath,* 7 *Barr* 111. *Bank of Utica v. Mercereau,* 3 *Barbour's Ch. Reps.* 567. *French v. Spencer,* 21 *Howard* 228. Now let us advert to the facts of the case in hand, and see how far the principles just stated apply to them. Before doing so, however, it is but proper to remark that the case stated presents the case imperfectly and incorrectly. It is only by examining the terms of the deed itself, from Menough and wife to Dowdall, that we are enabled to arrive at a correct understanding of the case before us.

By the case, as stated, Menough and wife are represented as conveying all their " estate, right, title, interest, property, claim, and demand whatsoever" in the land,—merely this and nothing more, which would seem to make the case very similar to that of *Comstock v. Smith,* and other cases of that class. But this is not so, for when we examine the deed of Menough & wife to Dowdall, which is referred to, and thus made a part of the case stated, we find that they therein grant and convey the *corpus* of the thing, —the land itself,—as well as the estate and interest in the land. In the first place their deed to Dowdall *recited* that by virtue of a certain indenture of bargain and sale executed by Samuel Woolston, the said John Menough

"became lawfully *seized in fee* of and in a certain tract of land situate in the City of Wilmington, south side of Seventh Street, at the distance of eighteen feet from the southeast corner of Seventh and Madison Streets, containing within its bounds seven thousand two hundred and ninety square feet more or less." Then follows the granting part of the deed in which the parties of the first part " grant, bargain, sell, alien, enfeoff, release, convey, and confirm unto the said party of the second part (Dowdall,) and to his heirs and assigns, all that part of the above mentioned and aforesaid property or *tract of land*, bounded and described as follows, to wit : beginning, &c." particularly describing the same by meets and bounds, "together with the buildings and improvements &c.," " and also, all the estate, right, title, interest, property, claim and demand whatsoever of them the said parties of the first part and their heirs." " To have and to hold the said *lot or tract of land* herein above described, with the buildings, improvements, hereditaments and premises, &c." unto the party of the second part, his heirs and assigns forever. Then comes the following covenant. " And the said John Menough for himself, his heirs, executors, and administrators doth covenant with the said party of the second part, his heirs and assigns, that he is lawfully *seized in fee* of the aforesaid and conveyed premises, and that they are free from all incumbrances, and that he has good right to sell and convey the same to the said party of the second part as aforesaid, and that he will, and that his heirs, executors and administrators shall, warrant and defend the same to the said Joseph Dowdall his heirs and assigns forever, against the lawful demands of all persons whomsover, claiming, or to claim, the same or any part thereof, by, from, or under them or any of them."

Now, as to the intention of the parties to the conveyance, did Menough intend to convey merely his right and title in the land be the same much, or little, or nothing, as the case might be ? Or did he not, rather, intend to convey the land itself, and the absolute estate and interest in

the land so as to vest  the same  in Dowdall in fee simple ?
Dowdall certainly expected to obtain the fee.   So that  the
parties intended  to  convey and  receive,  reciprocally,  the
very land, estate, and interest, which the deed purported to
convey.    The  grantor *recites* that he is. seized *in  fee*, he
covenants that he is seized in fee, and he grants  and  con-
veys the  land to Dowdall, in fee  simple,  by  apt and suffi-
cient words.

Now as to the warranty.    It is said that the terms of the
warranty in  this  case,  are  not sufficiently comprehensive
to estop the plaintiff, or to transfer the after acquired title.
It is said that all the cases cited  from  the  books  in which
it has been held that  the  after  acquired  title passed,  are
cases of  general  warranty, and  that this is a  special  war-
ranty.    But how  can  this difference in  the  terms of  the
covenant effect the case before us.    There seems to be no
rule of law better settled in this country at the present day
than that the estoppel working upon the estate binds both
parties and  *privies*.    It is true the grantor does not cove-
nant to warrant and defend against all  persons, or  against
a  stranger claiming  by  title  paramount ;  but  he  does
covenant  to  warrant  and  defend  the  conveyed  prem-
ises against all persons claiming  through or  under  him.
William  Potts,  the  plaintiff,  claims  as a  purchaser  at
sheriff sale under a mortgage executed by Menough & wife
to George  W. and Thomas P. Hawley, subsequently to the
conveyance  to  Dowdall.    Standing,  therefore, as  he does,
in the shoes of these mortgagees, he claims  under Menough,
and  is a privy in estate.    We  are,  therefore,  of  the  opin-
ion that he is estopped to deny the title of  the defendant ;
and that  Menough's  after  acquired title passed  to the de-
fendant immediately upon the execution of  the  deed  from
William S.  Boyd and wife.    As the defendant has been  in
possession from the date of  his deed,  it is  not  material  in
this case  to  consider the  effect° of  recording the  several
deeds referred to in the case stated.


Let judgment be entered in favor of the defendant.