## WATERS V. WATERS AND JONES.

1. **Mortgage:** RELEASE: QUIT-CLAIM DEED. A quit claim deed executed by the mortgagee to the mortgagor, conveying a part of the premises described in the mortgage, operates as at least a *prima facie* release of the mortgage as to the premises described in the deed; especially when the said premises have been conveyed to a purchaser after the record of the deed of quit-claim.

*Appeal from Henry District Court.*

FRIDAY, JUNE 8.

MORTGAGES: HOW SATISFIED OF RECORD: EFFECT OF QUIT-CLAIM DEED FROM MORTGAGEE TO MORTGAGOR: PETITION TO FORECLOSE MORTGAGE. — The only question in the case is: Did the plaintiff's quit-claim deed of October 9, 1856, to Simeon Waters, release his (plaintiff's) mortgage as to the tract therein described, the same having been afterwards purchased by the defendant, Jones? In the order of their execution, the instruments upon which the question arises are these:

1. July 7, 1854, Simeon Waters and wife mortgaged to the plaintiff, Simeon S. Waters, *several tracts* of land, including S. ½ S. W. ¼ 7, 72, 5, which is the eighty acres concerning which the present dispute exists.

The mortgage was to secure plaintiff $2,000 and interest. It had never been paid, and this petition is brought to foreclose it.

2. January 16, 1856. Simeon Waters and wife (the mortgagors) for the recited consideration of $4,000 "quit-claimed and conveyed to *Walter Goodale* all of their right, title and interest in the following described real estate," and among others, the tract in controversy.

3. October 9, 1856. Simeon S. Waters (plaintiff and mortgagee) executed to Simeon Waters (the mortgagor) a quit-claim deed for the eighty acres in controversy, but to no more, using therein the language "*in consideration of one*

*dollar I do hereby grant and quit-claim unto the said Simeon Waters, his heirs and assigns, all my right and title, claim and demand, unto a certain piece of land,*" &c., describing the eighty acres in controversy, but containing no recital as to the object or occasion of the conveyance.

4. July 28, 1857. *Walter Goodale* for the express consideration of $800, "quit-claimed and conveyed to *B. Muse Jones* (one of the defendants, and the sole appellant) all of his (*Goodale's*) right, title and interest in the following real estate," describing the eighty acres in question, and no more.

Each of the foregoing instruments were acknowledged "and *recorded* at the dates of each" respectively.

The petition to foreclose was filed against the mortgagor, Simeon Waters, the said Jones and others. All made default but Jones, who claimed that as to his eighty the mortgage was released by the above quit-claim deed from the plaintiff, dated October 9, 1856. The cause as to Jones was submitted to the court upon the pleadings and the foregoing instruments.

*No other evidence* was adduced by either party. The court decreed a foreclosure as to Jones' parcel, as well as against the other tracts embraced in the plaintiff's mortgage.

From this decree Jones appeals, and claims that his land should have been exempted from the foreclosure.

*A. H. Bereman* for Jones.

*Woolson & Bowman* for the plaintiff.

DILLON, J. — This cause has been well presented by the respective counsel and carefully considered by the court. MORTGAGE: It is our judgment that under the circumstances release: quit-claim deed. of the case, and upon the evidence before us, the decree of the District Court was erroneous.

The question turns upon the effect to be given to plain-tiff's quit-claim. And such effect should be given to it as will carry out the intention, and fulfill the purpose for which it was executed.

Now, "it is well settled, that in the construction of con-tracts, the situation of the parties and the subject matter of their transactions may be taken into consideration in determining the meaning of any particular sentences, or provisions, or instrument." Per WOODWORTH, J., *Wilson* v. *Troup*, 2 Cow., 228, and cases cited. The language used to express the intention is also to be carefully regarded. What was the situation of the parties and what the lan-guage used? Let us see.

The plaintiff had a mortgage upon several tracts of land. So far as shown, he had no other interest in the lands mortgaged to him, and never had.

Under these circumstances he executes to the mortgagor an instrument acknowledged *and in proper form to be put upon record*, and therefore we must suppose he intended it to be recorded, and thus to be seen and acted upon by the world. The language of this instrument is comprehensive. By it the mortgagee "grants and quit-claims" to the mort-gagor "and his heirs and assigns, *all* of my (his) *right* and *title, claim* and *demand*" to the parcel of land in question.

Now it must be taken that the mortgagee had a purpose in making, and that the mortgagor had a purpose in obtaining this instrument. If it does not release and dis-charge the mortgage, it is without object and purposeless. It is a vain act, accomplishing nothing. This, surely, was not what was intended. It can only have operation and effect by holding that it was designed to release from the mortgage lien the particular tract described.

" Suppose," says the appellant's attorney in his printed brief, " that S. S. Waters had originally deeded this land to Simeon Waters by an imperfect deed, and that the quit-

claim in question had been made to cure the imperfection, would it have invalidated the mortgage? Suppose, again, that S. S. Waters had, prior to the date of the quit-claim, assigned and transferred the notes, and had afterwards bought back the notes, would the mortgage be discharged?"

It might be a sufficient answer to say that the record presents no such case, without determining whether· if presented it could affect Jones; who acquired an interest subsequently to the recording of the quit-claim conveyance, and it is fair to presume upon the faith of it. Even as against the mortgagor the execution of the quit-claim, with the language used, would *prima facie* release the lien of the mortgage.

If this was not the intention, if the intention was to cure a defective title, or anything else than to release the mortgage, the plaintiff ought to have shown it.

No precise formality is necessary to release the lien of a mortgage. No reconveyance is necessary. Satisfaction may, by the statute, be entered upon the margin. Rev., § 3670. But this method is not exclusive, but is allowed for greater convenience. 1 Hill. Mort.; *Swatz* v. *Hurd*, 1 West Law. Month., 510.

Prior to foreclosure the legal estate, even, by our statute, remains in the mortgagor (Rev., § 2217), and he is the substantial owner. Upon payment or performance of the condition, the mortgagor or his assignee holds by virtue of the original title, and not by virtue of any title derived or acquired from the mortgagee.

This being so, what object could the plaintiff have had (he being then and ever the owner of the note), in making the quit-claim, unless it was to release the particular parcel therein named, which he could do without releasing the balance. *Culp* v. *Fisher*, 1 Watts (Pa.), 494; *Hicks* v. *Bingham*, 11 Mass., 300.

Again, it is argued by the plaintiff that, as the deeds

from the mortgagor to Goodale, and from Goodale to Jones, were *without warranty*, no after acquired title in Simeon Waters would inure to Goodale or Jones. *Jackson* v. *Winslow*, 9 Cow., 13; 4 Kent Com:, 271, note; *Pelletreau* v. *Jackson*, 11 Wend., 110, 114.

The principle of law thus contended for has, in our opinion, no proper application to the case. This may be illustrated in this way. Suppose the plaintiff, at the time of executing the quit-claim, instead of pursuing that course, had, as he might, entered upon the margin of the record of his mortgage, the same words as in the quit-claim, viz. : " I do hereby grant and quit-claim unto the said Simeon Waters, his heirs and assigns, all my right and title, claim and demand, unto a certain piece of land," described as follows, &c. Would it be doubted that Jones, who purchased after that entry was made, would, though he received no warranty, be protected from the plaintiff's mortgage? And the quit-claim deed ought to have the same effect as a satisfaction upon the margin of the record. *Prima facie,* it was as to the mortgagor a satisfaction.

It thus stood when Jones purchased. It will or may be justly presumed that he relied upon it. There was no *recital* in the quit-claim, or anything in the state of the title warning Jones that he might not regard the mortgage, satisfied as to the land he proposed to purchase. The note was, and is, in the hands of the party who executed the quit-claim. These are the circumstances of the case. The contest is now between the mortgagee and Jones. And under and upon these circumstances we hold (and this is the exact question which we decide), that the plaintiff cannot set up his mortgage as against Jones. Plaintiff cites and relies upon *Wilson* v. *Troup*, 2 Cow., 195, 230. The case is not in point. There the mortgagee, supposing that the equity of redemption had been abandoned and released, "under a mistaken

notion that he was the absolute owner, granted and conveyed certain of the lands mortgaged in fee," not to the mortgagor, but to *third persons*. And this was very properly held not to defeat either the right to redeem or the right to foreclose. As direct authority for the proposition that a quit-claim deed from the holder of the land to the mortgagor is at least a *prima facie* bar to the right to foreclose, see *Woodbury* v. *Aiken*, 13 Ill., 639 (1852); *Hills' Lessee* v. *West*, 8 Ohio 222 (1837). And see generally as to release of mortgage, *Proctor* v. *Thrall*, 22 Vermont, 262 (1850); *Laughlin* v. *Ferguson*, 6 Dana (Ky), 111, 114, 120 (1830); *McCormack* v. *Digby*, 8 Blackf., 99; *Honard* v. *Gresham*, 27 Geo., 347 (1859).

The decree as to Jones is

Reversed.