## SNYDER v. CASTLE ET AL.

*Mortgages—Release or satisfaction—Statutory methods not exclusive—Sections 8546, 8547 and 8548, General Code—Satisfaction by separate instrument—Endorsement in blank not assignment—Proof to sustain fraud.*

1. A charge of fraud must be sustained. Evidence of circumstances which merely excite suspicion, introduced to support such charge, is not sufficient.

2. Three methods are provided by Sections 8546, 8547 and 8548 for the record of the release of a mortgage. But these methods are not exclusive, and a release of a mortgage written on a sheet of paper and signed by the mortgagee, when copied by the recorder on the margin of the mortgage record, is sufficient record of such release.

3. The writing of the name of the mortgagee in blank upon the back of the mortgage does not constitute an assignment of the same.

(Decided April 19, 1922.)

APPEAL: Court of Appeals for Pike county.

*Mr. Levi B. Moore*, for plaintiff.
*Mr. Wilby G. Hyde*, for defendants.

SAYRE, P. J.   Plaintiff's action is predicated upon a note for $900, and the mortgage to secure the same, both dated January 19, 1920, and made and delivered by the defendants, Sarah L. Castle and George W. Castle, her husband, to one N. C. Williams.

On January 20, 1920, Williams, for value, endorsed the note and mortgage in blank and delivered the same to plaintiff, who, on January 21, 1920, filed the mortgage, but not the assignment, with the recorder of Pike county, Ohio, wherein such prem-

ises were located, who thereupon noted the same in alphabetical order on his daily register of mortgages filed for record, and thereafter duly recorded it.

On or about the 2d day of February, 1920, defendants Sarah L. Castle and George W. Castle entered into a contract with the defendant John W. Parker, whereby they agreed to sell and convey to him the premises, subject to the mortgage in suit, and shortly thereafter, in pursuance thereof, for value, they conveyed the same to him by a good and sufficient deed of general warranty. Before entering into such contract of purchase, and accepting such deed of conveyance, Parker caused the records in the office of the recorder of Pike county to be examined in order to ascertain the state of the title to the premises in question, and was advised by the person making such examination that the premises were vested in the defendant, Sarah L. Castle, in fee simple and free and clear of liens. Relying thereon Parker accepted the deed of conveyance and performed all his obligations under the purchase arrangement, including the making and delivery to Sarah L. Castle of a series of four purchase-money notes, aggregating $2,200; three of which, aggregating $1,600, were secured by mortgage upon the premises sold and purchased as aforesaid.

On or about the —— day of February, 1920, Parker learned that the mortgage in suit had been filed for record and recorded, was not released, and had been overlooked in said examination. At once he communicated his discovery to defendants Sarah L. Castle and George W. Castle, who admitted the truth thereof and agreed promptly to pay and satisfy such outstanding mortgage. Thereafter, on the

25th day of February, 1920, the following entry was made on the margin of the record of said mortgage in suit by the recorder of Pike county, to-wit:

"Feb. 24, 1920.

"To whom it may concern. This is to certify or show that this mortgage given to N. C. Williams by Sarah L. Castle is satisfied and this is a release of the same.

"N. C. Williams,
"Fullerton, Ky."

Such release so entered and recorded had not been endorsed on the original mortgage and copied therefrom by the recorder, but was copied by him from a separate paper writing made and delivered by N. C. Williams, without consideration, to George W. Castle, husband of the mortgagee, Sarah L. Castle, after Williams had endorsed the mortgage in blank and delivered the same to the plaintiff as aforesaid. Said paper writing was neither witnessed nor acknowledged, was written on an ordinary loose sheet of paper, and on February 25, 1920, delivered by said George W. Castle to the recorder with the request that the same be entered of record.

The defendant John W. Parker, being advised that the entry of satisfaction had been made, paid before maturity to Sarah L. Castle, who is now insolvent, the entire indebtedness evidenced by said series of purchase money notes. Earl Parker, son of John W., acted for his father in the several matters connected with the transaction.

When the mortgage was delivered to plaintiff the

name ''N. C. Williams'' had been written on the back of the same.

Plaintiff claims that such release was not entitled to record, was fraudulently obtained, and is invalid, void and of no effect; and, notwithstanding the same, asks that his mortgage may be foreclosed.

The defendant John W. Parker relies upon the record of satisfaction, claims that plaintiff is estopped by his failure to record the assignment to him of the mortgage in suit, and asks that his petition may be dismissed and the title to the premises described therein quieted against plaintiff's claim under the mortgage in suit.

The petition charges that the release of the mortgage to N. C. Williams was obtained by fraud, although it does not charge who committed the fraud. There are some circumstances in this connection that are at least suspicious, one being the payment by Parker of his indebtedness to Castle within forty-five days from the date of the sale, when, according to the notes, he had a much longer time in which to pay; another being the fact that Earl Parker would so readily believe the story of the Castles to the effect that the indebtedness represented by the mortgage to Williams, of the recent date of January 19, 1920, had been paid, especially since Parker knew that they had just deceived him as to the existence of that indebtedness. However, this is of no great consequence, because, while Parker might well doubt anything the Castles would say, there was at that time no apparent reason why he should suspect Williams as likely to engage in the unlawful release of the mortgage, and without Williams' cooperation the release could not be made. But this question of fraud must be disposed of at

the outset. Either we must hold Parker a party to the fraud, if he is, and find in favor of the plaintiff, and thus bring the case at once to an end, or we must treat him as acting honestly in regard to the cancellation and decide the case on that theory. We are bound to take the one position or the other. There is no halfway ground. As above stated, there are suspicious circumstances, but there is no sufficient proof of fraud, and we must proceed on the theory that Earl Parker's conduct in reference to the release of the mortgage by N. C. Williams was in good faith.

The defendant Parker relied upon the mortgage record as disclosing the true state of the title to the Castle land when he paid the notes and mortgage, which he had given in part payment of such land. He had a right to rely upon such record. (*Coe* v. *Erb,* 59 Ohio St., 259; *Pinney* v. *Merchants' National Bank,* 71 Ohio St., 173; *Swartz* v. *Leist,* 13 Ohio St., 419.) The opinion in the latter case, on page 424, contains the following:

"Leist, the purchaser, having no reason to suspect fraud, was justified in regarding the release legally made, by one who was ostensibly the proper party, as an effectual discharge of the lien."

This statement is repeated in the opinion of the case of *Pinney* v. *Bank, supra,* page 184.

In our case, Parker, the purchaser, having no reason to suspect that Williams had committed a fraud, was justified in regarding the release, legally made, by one who was ostensibly the proper party, as an effectual discharge of the lien.

The preceding sentence covers the case at bar in all respects save one, the fact that the release was not made according to the statute.

It would be very easy for the court to say that because a release was not made in one of the three ways prescribed by Sections 8546, 8547 and 8548, General Code, that, therefore, it should not be relied upon by one dealing with the property. But the court must go further and say why it should not be relied on. Neither counsel nor the learned trial court suggest any reason, and we know of none. The Legislature has prescribed three ways in which the release may be made, but there is no suggestion in the statute that the failure to comply with it in any of these respects shall render a release, the purpose of which is clear, of no effect. The purpose of a release is to make the record show that the condition of the mortgage has been performed, and thus give notice to the public of the state of the title. It would seem that the important thing is that the release appear upon the record, and that it be intelligible enough to be understood. If the statute provided only that the release must be copied from the original mortgage there would be considerable force in the contention that if not executed in accordance with the statute the release would be void, because it would indicate that the person interested must locate the instrument which evidences the lien before a valid release could be made. For instance, in this case it would have been necessary for the Parkers to have looked up Snyder. If the statute provided only that the release might be made in two ways, that is, by copying it from the original mortgage or by a certificate signed, witnessed and acknowledged as set out in Section 8547, General Code, we might be driven to conclude that the statute must be followed to effect a binding release, because the latter way compels more public-

ity by reason of the witnesses and acknowledgment before a public officer, and less chance of fraud. But in view of the statute, Williams could have written the cancellation on the margin of the record and signed his name, and it would have been strictly according to law and no objection could fairly be made to it. Now, we are at a loss to see what difference there would be, so far as the purpose of a recorded release is concerned, namely, to advise the public of the state of the title, between a release signed by the proper person on the margin and the release actually placed thereon in this case. Any disinterested person looking at the mortgage record and the release under consideration would fairly and reasonably conclude that the indebtedness of Sarah and George Castle to N. C. Williams was paid in full. A release of that kind fulfills the purpose of a release and we are wholly unable to see why the Legislature by prescribing three ways in which the release may be placed upon the record thereby intended to prescribe that no other way would be valid or any protection to those dealing with the property.

The following language is found in 2 Jones on Mortgages (2 ed.), Section 972:

"No precise formality in making a release of the lien of a mortgage is necessary. It may be effected by a reconveyance, although the only mode provided by statute is for an entry of satisfaction upon the margin of the record. But this method is not exclusive."

This language is suggested by the decision in *Waters* v. *Waters and Jones*, 20 Iowa, 363; 89 Am. Dec., 540. The syllabus in that case reads:

"A quit claim deed executed by the mortgagee

to the mortgagor, conveying a part of the premises described in the mortgage, operates as at least a *prima facie* release of the mortgage as to the premises described in the deed; especially when the said premises have been conveyed to a purchaser after the record of the deed of quit-claim.''

In the opinion, at page 366, is the following paragraph.

''No precise formality is necessary to release the lien of a mortgage. No reconveyance is necessary. Satisfaction may, by the statute, be entered upon the margin. Rev., § 3670. But this method is not exclusive, but is allowed for greater convenience. 1 Hill. Mort.; *Swartz* v. *Hurd*, 1 West Law. Month., 510.''

We take it that if N. C. Williams had on February 7, 1920, conveyed all his interest in the farm to the Castles by quitclaim deed, and the same had been recorded in the recorder's office of Pike county, the mortgage would have been lawfully released, although this is not one of the methods provided by the statute.

It will be observed that since Parker purchased the Castle farm on February 2, 1920, he was charged with the knowledge of the mortgage to Williams, and is not, in the strict language of the books, a ''subsequent purchaser or mortgagee.'' But while he was bound by the state of the record, as it was on February 2, 1920, when he purchased, he is likewise only bound by the state of the record as it was on March 17, 1920, when he paid his mortgage indebtedness. He occupies the position of one who never dealt with the property until after the release was placed on record February 7, 1920, and occu-

pies the exact position of a subsequent purchaser after the cancellation.

It is suggested that there was an assignment of the Williams mortgage in blank, because the name "N. C. Williams" was signed on the back of the mortgage. But an assignment of a mortgage in which the grantee's name is not inserted is, until some name is therein written, entirely nugatory. *Curtis* v. *Cutler,* 76 Fed. Rep., 16, 17; *Drury* v. *Foster,* 2 Wall., 24, 33; *Swartz* v. *Ballou,* 47 Iowa, 188, 193; *Burns* v. *Lynde,* 6 Allen, 305, 311; 1 Devlin on Real Estate (3 ed.), Section 456; *Casserly* v. *Morrow,* 101 Minn., 16.

In our judgment, this is a case for the application of the principle announced in *Selser, Exr.,* v. *Brock,* 3 Ohio St., 302:

"Where one of two innocent persons must suffer by the fraud of a third person, he who first trusted such third person, and placed in his hands the means which enabled him to commit the wrong, must bear the loss."

The plaintiff first trusted Williams, and, by neglecting to make and record a proper assignment, placed in his hands the means, that is, made it possible for Williams to commit the wrong—the making of the fraudulent cancellation. The plaintiff, therefore, must bear the loss.

The decree will be in favor of the defendant John W. Parker.

*Decree for defendant.*

MIDDLETON and MAUCK, JJ., concur.