## CARIUS v. THE OHIO CONTRACT PURCHASE CO.

(Decided March 26, 1928.)

*Mr. Mark A. Copeland,* for plaintiff in error.
*Messrs. White, Cannon & Spieth,* for defendant in error.

VICKERY, J.   This cause comes into this court on a petition in error to the common pleas court of Cuyahoga county, in which court defendant in error brought an action upon several promissory notes of $50 each and recovered a judgment for the full amount sued for, and it is to reverse that judgment that error is prosecuted here.

It seems from the record that the defendant below, Louis Carius, bought a refrigerator under a written guaranty that it would do certain things, he being in the meat market business; that the refrigerator was to be used in connection with his business; that the price of the refrigerator was $1,500; that there was a down payment of $100, and the balance of the purchase money was secured by 28 promissory notes

of $50 each, payable, the first within 60 days after date, and the others 30 days thereafter until all were paid, with interest at 7 per cent. All of these notes were secured by a mortgage upon the article purchased, and 16 of them were paid.

The mortgage which was executed contemporaneously with and as a part of the same transaction contained an acceleration clause which provided in effect that if any one of the notes was not paid when due, all of the remaining notes would, at the election of the payee, become at once due and payable. It seems that the seventeenth note was not paid when due, and the holder of the notes elected to have all the remaining notes become due at once under the acceleration clause of the mortgage, and so instituted the suit.

The action was brought by the Ohio Contract Purchase Company, defendant in error here, which is a finance company, who shortly after these notes were executed, before any of them I believe were due, had become the purchaser of them, and the notes having been turned over to them they claim the right to sue and maintain the suit on the ground that they are a *bona fide* purchaser for value before maturity, and took the notes free from any equities between the parties. This is important because the court held that, as against Carius, the maker of these notes, the payee could not recover, inasmuch as there was a warranty as to what the refrigerator would do, which as a matter of fact was worthless, and that the original payee of this paper would not have been entitled to recover because of the breach of warranty and the failure of the refrigerator to do what it was alleged it would do.

In addition to the written mortgage, there was a separate contract entered into, which set forth the terms of the contract and the warranties of the refrigerator company as to what this refrigerator would do. As already stated, a judgment was rendered for the full amount sued for. A motion was made for a new trial, which was overruled, and it is to reverse that judgment that error is prosecuted here.

There are three errors that are complained of. One is that the notes themselves did not contain the acceleration clause, and therefore there was nothing in the notes to show that they had become due, and the suit was prematurely brought, inasmuch as on the face of the paper the notes were not due until long after the suit had been brought.

We think this contention is not very sound, inasmuch as the court, in the case of *Brewer* v. *Penn. Mutual Life Ins. Co.* (C. C. A.), 94 F., 347, held that a paper, executed contemporaneously with the notes, which contained the acceleration clause, should be taken in connection with the notes, and could be considered to see whether or not the notes had become due. The syllabus is as follows:

"Notes, and a mortgage securing the same, executed at the same time, constitute a single contract, and a provision of the mortgage that, on the failure of the maker to perform any agreement contained in either the notes or mortgage, the entire debt may be collected, gives the holder the right, on default in the payment of interest, to declare the notes due for all purposes, and to collect them by suit in the ordinary form, as well as by foreclosure."

We think the weight of the authority is to the

effect that where an acceleration clause is in the mortgage which secures the notes, and the notes say on their face, at least, that they are secured by a mortgage, it is a sufficient reference, and the acceleration clause is operative to make all these notes due at the election of the party. In the instant case there was not one agreement, but two, to that effect, so we do not think that question is so very important, in the view we take of this case.

Another ground of complaint was that the finance company did not prove the genuineness of the signature of the payee of this paper. We have recently held in *Rubin* v. *Commercial Savings & Loan Co., ante,* 27, that if commercial paper is made payable to a certain person, or a certain corporation, and that corporation's name appears on the back of the paper, where an indorsement would usually be, that fact prima facie establishes the transfer of the paper. So we do not think that there is anything in this contention.

The other contention is that the notes show an incomplete special indorsement, that is, there was a blank in which the indorsee's name was to be filled in, which was not done, and that this made an incomplete special indorsement which would make it incumbent upon the plaintiff, as a part of its case, to prove that it was the holder and owner of this paper in the first instance. We think that the law is well settled that if the payee of a note indorses the paper "to the order," and then leaves a blank to fill in the name of the indorsee, and the name is not put in, and the payee of the paper then signs it, this is equivalent to a blank indorsement and the note is payable to bearer, and this view is supported

by *Nickell* v. *Bradshaw,* 94 Or., 580, 183 P., 12, 11 A. L. R., 623. We think the law is well settled that what would have been a restrictive or special indorsement if completed, and the name of the indorsee had been put upon it and it had been payable to the order of that indorsee, if the indorsee's name is left out and it is then signed by the payee of that paper, that transfers the title, and the holder thereof is a holder of paper that is payable to bearer. But that is not the question that is troublesome in this case. There is a much more serious and grave error, and that is that this paper was not indorsed at all, and the importance of that will be seen when you take into consideration the record and learn that the court held that the maker of this paper had a complete defense against the payee of the paper. On an examination of the notes (we have demanded the originals, but they do not seem to be forthcoming, and we have to rely upon the copies), we find on the back of each note this writing:

"For value received, I, we, hereby assign this note and the mortgage securing it to the ———, and each and all of the endorsers hereon, jointly and severally guarantee payment of principal and interest of the within note, as and when the same shall become due, and of any extension thereof in whole or in part, accepting all its provisions, authorizing the maker, without notice to us or either of us, to obtain an extension or extensions in whole or in part, and waiving presentment for payment, demand, protest and notice of protest and non-payment.

"Dealer: Zero Refrigerating Co.,
   "By G. O. Bolin,
      "The Zanesville Engineering and
      Refrigerating Company,
      "Per C. W. Albertson, Treas."

Now a scanning of this writing, which appears on the back of this paper, shows it was not transferred by an indorsement at all, but that the holder of it became nothing more than an assignee. The language is clear and unequivocal, "for valuable consideration we assign the notes and the mortgage securing the same," and it then goes on and adds a guaranty of the payment and waives the notice of presentment and notice of nonpayment, and so forth. The word "assign" has a definite and distinct meaning, and a transfer of a contract by assignment is quite different from a transfer of a contract for the payment of money only by indorsement; in other words, a promissory note. That a promissory note that could otherwise be transferred by indorsement need not be so transferred, but may be transferred by assignment, is unquestionably the law, and the books are filled with such cases. The ownership of a note can be transferred by delivery of the note, even though it is payable to order, and the holder of that paper, the owner of it, can recover even though it is not indorsed, but it would be subject to all the equities between the original parties. The purpose of the indorsement and transferring by indorsement in due course is to cut off the equities between the original parties, and had the payee of this paper indorsed this paper to the order, or in blank, and waived notice of protest, presentment, and notice of nonpayment, and signed it, the contract made by law would have fixed the rights of the parties, and the rights of the parties would have been that the indorser, the payee of this paper, would have been liable as a surety. The liability was absolute, determined, and fixed, and nothing short of some act or

transaction which would release a surety would release any of them.

Now an indorser's contract is so well defined in the books and in the Code that it hardly seems necessary to cite it, but it is this: That if when this note is due it is presented to the maker for payment, and the maker refuses or neglects to pay it, and the indorser is notified in due season, then he will pay it. That is an absolute contract, and the effect of waiving notice of presentment and demand is only to fix the liability without such notice; but it does not change the legal effect of an indorser's contract.

Now what are an assignee's rights under a contract, whether it be negotiable paper or any other contract? Why, manifestly he stands in the shoes of the assignor. He has the same title that the assignor had, no better, no worse, and if the assignor could not recover, neither can the assignee, and in this case the court held that the maker had a complete defense against the assignor, had the notes been in its possession and had it brought the suit. Now that being so, when this note was assigned the assignee stood in the assignor's shoes exactly, and he is not entitled to the protection given to a *bona fide* indorsee of notes in due course, who takes it without any knowledge of defects.

Just why this note was assigned we do not know, but there is no question but that the note was assigned, and not only was the note assigned, but the mortgage as well. Of course as a matter of law it would not have been necessary to assign the mortgage. If these notes had been transferred by indorsement, the security would have gone with them, and without any assignment the law would have

taken care of that, because the securities follow the notes they secure. So there must have been clearly a purpose within the minds of the parties in making this an assignment, and they used unequivocal language to that effect.

Now an examination of the use of the terms "indorsement" and "assignment" will clearly show what they mean, and in this case we think the transfer of title was not by indorsement, that the language used on the back of this paper refutes and disputes that proposition, and that the paper was transferred by assignment, and that being so, if there was a good defense against the assignor, there likewise would be a good defense against the assignee.

Now the record shows, as already pointed out, that this refrigerator was worthless for the purpose for which the defendant below bought it, and that there was a complete defense in defendant's favor against the payee of this paper. The defendant in error standing in the shoes of the assignor can no more recover than it could recover.

Our attention has been called to the case of *Lenhart* v. *Ramey,* 3 C. C., 135, 2 C. D., 77, as a case in point, and it is argued that the conclusion therein is different from the conclusion that we are arriving at. An examination of that case will show that there a note was made by one Brayton, payable to the order of Lenhart or bearer, and Lenhart transferred this paper before maturity to a man by the name of Mootz, with this writing on the back of the paper:

"I assign all my interest, right and title of the within note to George Mootz."

Subsequently the note was not paid by Brayton when due and presented by the holder, the indorsee of Mootz, who claimed to hold it as an innocent holder for value, before maturity, and notice was given to Lenhart and Mootz as indorsers, and the question was whether Lenhart was an indorser of this paper, so as to be liable on an indorser's contract. It will be noticed, upon an examination of this note, that it was payable to Lenhart or bearer, and the title could have been transferred by mere delivery, and then Lenhart would not have been liable as an indorser; but he saw fit to write his name on the back of this paper, and above it were the words already referred to. Now the majority of the court in that case held that those words above the signature did not mean anything, and that, had Lenhart meant to limit his liability so that he would not be responsible as an indorser, he should have indorsed it "without recourse," or used other apt words; that the words written above his signature did not mean anything. Even in that case, however, Judge Seney, one of the ablest judges of that time, dissented and held that Lenhart was not liable, because he merely was an assignor of that paper and not an indorser. Had I been sitting on the bench then, from the way in which this question arose I should have held that as between the holder of the paper, who received it through Lenhart in the chain of title, and Lenhart, Lenhart, if he had been properly notified, could have been held as an indorser. In other words, I should have held with the majority of the court.

But that case is not anything like the instant case. If the indorser of this paper was seeking to get out,

and had just signed its name after the writing which appeared above its name, that is, after the assignment, the question raised in *Lenhart* v. *Ramey, supra,* might have arisen, but here the question is as to the rights of the maker of this paper against the payee; the maker having a good defense, as already pointed out. We do not think the above case is at all a case in point, and so far as has been pointed out to us it is the only case in Ohio, and that case not being in point, and there being a dissenting opinion in it, it seems to us it leaves us free to lay down a rule in Ohio.

Now there is the case of *Jones County Trust & Sav. Bank* v. *Kurt,* 192 Iowa, 965, 182 N. W., 409, which is a case in point, and there there was an assignment on the back of the paper, and it was held that it amounted to an indorsement which would cut off the rights of the maker of the paper to set up a defense against the holder under that assignment. That case is more like the instant case, but an examination of the authorities upon which that case is based will show that it is based upon *Sands* v. *Wood,* 1 Iowa, 263, and *Sears* v. *Lantz & Bates,* 47 Iowa, 658. An examination of these cases will show that the action was between the indorser and the indorsee who acquired, through such indorser, his title, and was seeking to hold the indorser, the maker of the note not having paid the note at maturity, proper notice having been given, and the same reasoning applies to those cases as applies to the Third Ohio Circuit Court case, *supra,* and so the arguments of the court in 192 Iowa, *supra,* are based upon the same reasoning that the Ohio Circuit Court case, *supra,* is based.

We do not feel obliged to follow the Iowa case, especially in that in the instant case the assignment was different and broader than the one in the Iowa case. In the instant case, as already pointed out, there is not only an assignment of the note, but an assignment of the mortgage, and as in the Iowa case there was a guaranty, and so forth. Therefore, there being no authority in Ohio other than the one that has been called to our attention, and that having been distinguished from the instant case, we do not feel as if the Iowa case was a case in point under the circumstances. In any event, we are not obliged to follow it.

We therefore have come to the conclusion that in the instant case the writing upon the back of these notes was an assignment and it not only assigned the note, but assigned the mortgage; and there were other circumstances here that would put the purchaser upon its guard, for it knew what these notes were given for. There being a complete defense, as already pointed out, by the maker of this paper against the payee, the same defense can be used against the present holder of the paper.

Consequently, we think that the court erred in his judgment, and the judgment must therefore be reversed and the case remanded, for the reasons that the judgment is contrary to law and is not supported by sufficient evidence.

*Judgment reversed and cause remanded.*

SULLIVAN, P. J., and LEVINE, J., concur.