**In re GEMINI SERVICES, INC., Debtor.**

**Gemini Services, Inc., Plaintiff,**

v.

**Mortgage Electronic Registration Systems, Inc., et al., Defendants.**

**Bankruptcy No. 05–31317. Adversary No. 05–3190.**

United States Bankruptcy Court, S.D. Ohio, Western Division at Dayton.

Aug. 29, 2006.

Thomas R. Noland, Statman, Harris, Siegel and Eyrich, Dayton, OH, for Debtor.

Patricia L. Hill, Statman, Harris, Siegel and Eyrich, Dayton, OH, for Debtor/Plaintiff.

Douglas N. Hawkins, Cincinnati, OH, Mary Anne Wilsbacher, Columbus, OH, for U.S. Trustee.

John L. Day, Laura R. Faulkner, Weltman, Weinberg & Reis Co. LPA, Cincinnati, OH, Michael A. Axel, KeyBank National Association, Cleveland, OH, Tami Hart Kirby, Dayton, OH, Alejandro L. Bertoldo, U.S. Department of Justice, Alan Shapiro, Washington, DC, for Defendants.

## DECISION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 74) AND GRANTING DEL NORTE REFI, LLC'S AMENDED MOTION FOR SUMMARY JUDGMENT (DOC. 79)

THOMAS F. WALDRON, Bankruptcy Judge.

### Background

Gemini Services, Inc. (Gemini) is the Debtor in possession in this chapter 11 case, which was filed on February 18, 2005. On April 29, 2005, Gemini filed a complaint against Mortgage Electronic Registration Systems, Inc. ("MERS"), Del Norte Refi, LLC ("Del Norte"), Key Bank National Association ("Key Bank") and the United States of America, Internal Revenue Service (the "I.R.S."). (Doc. 1) An amended complaint was filed on May 2, 2005 to include various attachments. (Doc. 2) The amended complaint sought to determine the validity of a mortgage against the Debtor's business property [8721 Washington Church Road, Miamisburg, Ohio 45342 (the "property")] and to determine two proofs of claim filed by the I.R.S. All the parties, except MERS, answered the complaint. See Docs. 24 (Del Norte), 25 (the I.R.S.) and 30 (Key Bank).

Following a pretrial conference on July 27, 2005, Key Bank was dismissed because it disclaimed any interest in the property. See *Order of Dismissal* (Doc. 37).

On October 5, 2005, the court held another pretrial conference at which it was agreed that the issues between Del Norte and the Debtor could be resolved by summary judgment and a discovery cutoff was established. See *Order: Fixing Discovery Cut-Off, Establishing Dates For Filing Motions For Summary Judgment and Ordering Other Matters—October 5, 2005—* Doc. 45.

On October 27, 2005, a default judgment was entered against MERS. It failed to answer or respond to a *Motion for Default Judgment* (Doc. 50).

On November 7, 2005, the Debtor and the I.R.S. entered into an *Agreed Entry on Count Two of Plaintiff's Amended Complaint.* (Doc. 52) The agreement determined the I.R.S.' third proof of claim superseded the previously filed proofs of claim and set the amount of the secured, unsecured priority and general unsecured portion of the I.R.S. claim. *Id.*

On December 6, 2005, the Debtor and Del Norte stipulated to various facts and exhibits. (Doc. 54) Without detailing various filings, pretrial conferences and hearings, it became apparent that, although all parties, including the IRS, had previously agreed to a summary judgment procedure involving only Gemini and Del Norte, all parties subsequently determined the IRS should participate in the proposed summary judgment proceedings in connection with the remaining causes of action of the Debtor's amended complaint.[1]

Accordingly, on January 25, 2006, the court issued its *Order Vacating Prior Order, Fixing Discovery Cutoff Date and Ordering Other Matters.* (Doc. 62) The discovery cutoff was set at February 28, 2006 for all parties, including the I.R.S. The discovery cutoff was subsequently extended until April 28, 2006. (Doc. 67) At that time, all the parties agreed discovery was completed and that the remaining issues in the Debtor's amended complaint (Doc. 2) could be resolved as a matter of law.

On May 26, 2006, the court issued a final scheduling order which required all stipulations by June 9, 2006 and set dates for summary judgment filings. (Doc. 72) The I.R.S., although participating in the extended discovery in this adversary proceeding, did not file any documents after the court issued the May 26, 2006 order. On July 12, 2006, Del Norte and the Debtor filed additional stipulations to supplement the filings of December 2005. (Doc. 75) This filing was superseded by a corrected set of supplemental exhibits on July 17, 2006. (Doc. 77) On June 8, 2006, the

Debtor filed for Summary Judgment. (Doc. 74) Del Norte filed a cross-motion for summary judgment and a response to the Debtor's *Motion* (Doc. 79) on July 19, 2006.[2] On July 27, 2006, the Debtor filed a reply brief in support of its *Motion* (Doc. 74) and a response to Del Norte's cross-motion. (Doc. 80)

### *Facts*

The parties have stipulated to most of the relevant facts. The remaining uncontested facts are determined, for this decision, based on the agreed set of exhibits filed by the parties.[3]

On March 3, 2000, Key Bank loaned Gemini $390,000. In consideration for this loan, the Debtor executed a promissory note (the "note") and a mortgage (the "mortgage") in favor of Key Bank. (Doc. 77—¶ 8, 9) The mortgage was properly recorded. (Doc. 77—¶ 10) On July 31, 2003, Key Bank endorsed the note to Del Norte. (Doc. 77—¶ 11; Exhibit J) As stipulated to by the parties, "[o]n November 10, 2003, Key Bank executed an Assignment of Mortgage to MERS (the 'Assignment'). The Assignment was filed with the Montgomery County Recorder's Office on December 9, 2003 at A/M 03–162105." (Doc. 77—¶ 12; Exhibit L) On February 19, 2004, MERS filed a court action for judgment on the note and for foreclosure on the property (the "foreclosure action"). (Doc. 77—¶ 14; Exhibit C) On March 4, 2004, Del Norte filed a separate action for a cognovit money judgment for the balance due on the note. (Doc. 77—¶ 15; Exhibit H) On March 18, 2004, Del Norte was granted judgment on the note (Doc. 77—

---

**1.** This decision will impact the lien priority of the I.R.S. against the property.

**2.** To clarify the record, Document 79 is the second amended response of Del Norte. Therefore, the court did not consider the previous filings—See Docs. 76 and 78.

**3.** The agreed exhibits are found in the *Agreed Stipulation of Exhibits and Facts* (Doc. 54) and the *Second Amended Agreed Stipulations of Exhibits and Facts.* (Doc. 77).

¶ 16; Exhibit I) and filed a certificate of judgment against the property the same day (Doc. 77—¶ 17; Exhibit T). On July 10, 2004, MERS dismissed the cause of action on the note from the foreclosure action. (Doc. 77—¶ 18; Exhibit D)

On September 7, 2004, MERS filed a *Motion for Default Judgment* in the Court of Common Pleas, Montgomery County. (Exhibit E) On September 14, 2004, the state court entered its *Judgment Entry/Foreclosure Decree.* (Exhibit F) The state court unambiguously found the Debtor in default. The court found that "the Plaintiff" was due $370,014.30, plus interest on the note. "The Plaintiff", as referenced in the state court order, is not identified except on the caption of the document which refers to "Mortgage Electronic Registration Systems, Inc., Its Successors and Assigns." The court also ordered foreclosure on the mortgage. Del Norte was not a named party to the state court proceedings in the foreclosure action.

On October 19, 2005, the note was registered with MERS. (Doc. 77—¶ 19) The servicing agent for the note held by Del Norte is SN Servicing Corporation. (Doc. 77—¶ 21; see also Exhibit M—*Security National Servicing Corporation Ledger for Gemini Loan dated October 19, 2005* and Exhibit N—*SN Servicing Corporation payoff balance calculations dated October 19, 2005 for Gemini Loan).*

### Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

### The Rooker Feldman Doctrine Does Not Bar This Court From Exercising Jurisdiction

■ As a preliminary issue, Del Norte asserts that the *Rooker Feldman* doctrine bars this Court from exercising jurisdiction in this adversary. The court determines the *Rooker Feldman* doctrine does not bar this court from exercising subject matter jurisdiction in connection with the remaining issues in this adversary proceeding. The Court recognizes that, since the *Rooker Feldman* doctrine addresses subject matter jurisdiction, it must be considered at any point in a proceeding. See Federal Rule of Civil Procedure 12(h)(3), applicable to adversary proceedings by Bankruptcy Rule 7012(b) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.") The Court notes, however, it appears to be, at a minimum, inconsistent, if not disingenuous, for Del Norte, after participating in multiple proceedings in this case and this adversary, to, for the first time, substantively urge that this court has no jurisdiction, particularly when Del Norte, during the pretrial stage of this adversary, declined this court's invitation to consider abstention in favor of an alternate court forum. Nevertheless, the Court considers Del Norte's argument that this court cannot determine the validity or priority of Del Norte's lien, since any review of the prior state court proceedings would constitute the bankruptcy court acting as an appellate court in review of the state court decisions and such action is prohibited by the *Rooker Feldman* Doctrine.

■ Based on two United States Supreme Court decisions, the *Rooker Feldman* doctrine limits the subject matter of jurisdiction of the lower federal courts to review state court judgments:

"The *Rooker/Feldman* doctrine derives its name from two cases *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d

206 (1983), which revived a doctrine of federal court jurisdiction established by *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 835 n. 1 (6th Cir.2001). "The doctrine expresses the principle that federal trial courts have only original subject matter, and not appellate, jurisdiction [and] ... may not entertain appellate review of [or collateral attack on] a state court judgment.'" *Singleton v. Fifth Third Bank (In re Singleton)*, 230 B.R. 533, 536 (6th Cir. BAP 1999) (quoting *In re Johnson*, 210 B.R. 1004, 1006 (Bankr.W.D.Tenn.1997)).

*In re Nosker*, 267 B.R. 555, 567, fn. 7 (Bankr.S.D.Ohio 2001).

■ In a recent decision, the United States Supreme Court ruled on the limitations on the *Rooker Feldman* Doctrine:

> The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 1521–22, 161 L.Ed.2d 454 (2005). See also *McCormick v. Braverman*, 451 F.3d 382, 389–92 (6th Cir.2006) (review of the history and limitation of the *Rooker Feldman* doctrine).

■ Del Norte claims that the state court has already determined Del Norte has the first and best lien on the property.

The record, however, does not support this conclusion. It is correct that a state court granted Del Norte a certificate of judgment; however, that was merely as a result of an action on the note and contained no preclusive determinations in connection with any issues involving title or priority of liens on the property. (Doc. 77—¶ 16) Separately, MERS, not Del Norte, was granted a judgment in the *in rem* foreclosure action. Del Norte is not a named party on any state court document in the foreclosure action. This court accepts, as it must, the state court judgments and does not act as a de facto appellate court; however, *accepting the preclusive determinations of the separate state court judgments in regard to the mortgage and the note*, this court must, nevertheless, determine the effect of those judgments, the various mortgage documents and assignments, and the agency relationship between Del Norte and MERS, under applicable Ohio law, in the context of a chapter 11 case. This is consistent with the mandate from *Exxon:*

> Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. The Full Faith and Credit Act, 28 U.S.C. § 1738, originally enacted in 1790, ch. 11, 1 Stat. 122, requires the federal court to "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986); accord *Matsushita Elec. Industrial Co. v. Epstein*, 516 U.S. 367, 373, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380–381, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Preclusion, of course, is not a jurisdictional matter. See Fed. Rule Civ. Proc. 8(c) (listing res

judicata as an affirmative defense). In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court.

*Exxon Mobil Corp.*, 544 U.S. at 293, 125 S.Ct. at 1527.

This court would be obligated to follow a state court judgment explicitly concluding the mortgage is held by Del Norte as the first and best lien; however, as a result of the procedures followed, and, perhaps more importantly, not followed by the parties prepetition, there is no such state court determination. If such a "smoking gun" document existed, it appears this adversary would not have been necessary.

Accordingly, rather than being barred by the *Rooker Feldman* Doctrine from exercising jurisdiction, this court, consistent with directive of *Exxon*, accords the state court judgments appropriate preclusive effect in connection with the determination of the issues presented for summary judgment in this adversary.

### Positions of the Parties

The Debtor's position is that the mortgage assignment from Key Bank was to MERS and not Del Norte; and, further, the mortgage assignment fails to state MERS is the agent for Del Norte. As a result, since MERS claims no ownership interest in the property and the Debtor can step into the shoes of a hypothetical bona fide purchaser, the Debtor can avoid Del Norte's claim that it has the first and best lien on the property.

Del Norte argues that the mortgage assignment to MERS simply transferred legal title to MERS under a limited agency relationship; however, the transfer of the note ensured that Del Norte held the beneficial interest in the mortgage and, under applicable Ohio law, the Debtor cannot assert the position of hypothetical bona fide purchaser and, thus, is unable to avoid the mortgage interest of Del Norte.

### Issue Determined

The court determines that Del Norte holds the first and best lien against the property and this lien may not be avoided by Gemini.

### Summary Judgment Standard

This court reviewed the summary judgment standard in a recent reported decision:

The familiar standard to address the parties' filings is contained in Federal Rule of Civil Procedure 56(c) and is applicable to bankruptcy adversary proceedings by incorporation in Bankruptcy Rule 7056. Federal Rule of Civil Procedure 56(c) states, in part, that a court must grant summary judgment to the moving party if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986). If the burden is on the non-moving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim; or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–332, 106 S.Ct. at 2557. Thereafter, the opposing party "must come forward with 'specific

facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–251, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 586–588, 106 S.Ct. at 1356–57.

*Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc),* 313 B.R. 732, 735 (Bankr. S.D.Ohio 2004).

### *Analysis*

### *The Endorsement of the Note and the Assignment of the Mortgage*

■ A bankruptcy trustee may avoid any transfer that is voidable by a hypothetical bona fide purchaser as of the commencement of the case. 11 U.S.C. § 544(a)(3); *Kovacs v. First Union Home Equity Bank (In re Huffman),* 408 F.3d 290, 293 (6th Cir.2005). This opportunity for avoidance is equally available to a chapter 11 debtor in possession. 11 U.S.C. § 1107(a). State law defines who is entitled to bona fide purchaser status. *Thacker v. United Cos. Lending Corp.,* 256 B.R. 724, 729 (W.D.Ky.2000); See R.K. Arnold, *Yes, There is Life on MERS,* 11–Aug Prob. and Prop. 32, 35 (July/August 1997) (Article summarized the rights of a trustee under § 544(a)(3) and noted that "every state designates certain places where mortgages ... must be recorded to be valid against a bona fide purchaser....")

Both the Debtor and Del Norte cite to the Supreme Court of Ohio's decision in *Kernohan v. Manss,* 53 Ohio St. 118, 41 N.E. 258 (1895). In *Kernohan,* the court reaffirmed Ohio law concerning notes and mortgages:

1. Where a promissory note is secured by mortgage, the note, not the mortgage, represents the debt. The mortgage is, therefore, a mere incident, and an assignment of such incident will not, in law, carry with it a transfer of the debt. On the other hand, a transfer of the note by the owner, so as to vest legal title in the indorsee, will carry with it equitable ownership of the mortgage. And so, if the debt be evidenced by several promissory notes, the legal transfer of a portion of the notes carries with it such proportional interest in the security as the notes transferred bear to the whole. *Harkrader v. Leiby,* 4 Ohio St. 602; *Swartz v. Liest[Leist],* 13 Ohio St. 419; *Fithian v. Corwin,* 17 Ohio St. [118]119; *Allen v. Bank,* 23 Ohio St. 97; *Holmes v. Gardner,* 50 Ohio St. 167, 33 N.E. 644.

2. Being but an incident of the debt, the mortgage remains, until foreclosure or possession taken, in the nature of a chose in action. Where given to secure notes, it has no determinate value apart from the notes, and, as distinct from them, is not a fit subject of assignment. And, where the notes are legally transferred, the mortgagee, and all claiming under him, will hold the mortgaged property in trust for the holder of the notes. *Jordon[Jordan] v. Cheney,* 74 Me. 359; Jones, Mortg. 818; Pom. Eq. Jur. § 1210.

*Id.* at 133, 41 N.E. 258.

■ *Kernohan* simply restated settled principles of Ohio real estate law. At least as far back as 1831, the Supreme Court of Ohio held a mortgage is not a separate property interest distinct from the note it secures, but instead is considered an incident to that debt. See *Edgar v. Haines,* 109 Ohio St. 159, 164, 141 N.E. 837 (1923) (collecting cases including *Paine v. French,* 4 Ohio 318 (1831)). Upon the

transfer of the note from Key Bank to Del Norte, the equitable interest in the mortgage transferred to Del Norte. *The Executors of William Swartz v. Leist,* 13 Ohio St. 419 (1862).

The legal interest in the mortgage was assigned from Key Bank to MERS and was recorded. The undisputed evidence establishes that the assignment was for the limited purpose of MERS acting as the agent for Del Norte. *Affidavit of Mortgage Electronic Registration Systems, Inc. in Support of Del Norte REFI, LLC's Motion for Summary Judgment* (Attached to Doc. 79—hereinafter the "MERS Affidavit"). Thus, MERS held the legal title to the mortgage as the assignee, but could not hold the beneficial interest in the mortgage because, under Ohio law, the mortgage is merely an incidental security interest to the debt and the note had been endorsed to Del Norte.

Exhibit L is the November 10, 2003 Assignment of Mortgage from Key Bank to MERS. It states, in part, that "For Value Received, KEY BANK ... does hereby grant, sell, assign, transfer and convey, without recourse onto [MERS] the mortgage loan documents identified below ... including documents in the possession of [Key Bank] pertaining to the loan as evidenced by the Note...." Thus, although the document appears to transfer the mortgage to MERS, under Ohio law, only the legal title to the mortgage was transferred. As noted, an unbroken line of cases for nearly two centuries holds the beneficial interest in the mortgage was transferred from Key Bank to Del Norte at the time Key Bank endorsed the note to Del Norte. (Doc. 77—¶ 11; Exhibit J) Again, the undisputed evidence establishes that MERS was only acting as an agent of Del Norte for purposes of holding legal title to the mortgage. The MERS Affidavit.

Nothing in the endorsement of the note or the assignment of the mortgage are sufficient to prevent the determination that MERS has the first and best lien against the property and this lien may not be avoided by Gemini.

### The Terms of the Agency Agreement Between Del Norte and MERS

The Debtor correctly states that the assignment of the mortgage never indicates MERS is acting as a nominee or agent for Del Norte; however, there is no statutory requirement that an agent to an assignment explicitly state that it is acting as an agent, nor does the failure to do so invalidate the assignment. Ohio Revised Code § 5301.291 specifically provides a mortgage release, cancellation or satisfaction is not deemed defective because "the executor, administrator, guardian, assignee or trustee signed it individually instead of in his representative or official capacity." To the extent this statute does not specifically include the term "assignment", the court cannot find any basis to hold the assignment of a mortgage to a higher standard than a "mortgage release, cancellation or satisfaction."

The Debtor correctly points out that at least one of the provisions of MERS agreement was not followed in the transaction involving Key Bank, Del Norte and MERS, because the mortgage, at the time of filing, was not registered with MERS. Exhibit BB is the Corporation Resolution of MERS. Paragraph 5 states that "[i]f the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date." The parties stipulated that the loan was not registered with MERS until October 19, 2005, long after the petition date. For purposes of determining whether a hypothetical bona fide purchaser can defeat the mortgage lien of Del Norte, the petition

date is the relevant snapshot. *Huffman*, 408 F.3d at 293.

Paragraph 6 of Exhibit BB, however, states that:

MERS and the Member agree that: (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

Again, the undisputed evidence establishes that MERS and Del Norte agree that MERS had the limited agency power to be assigned the mortgage and to hold legal title. See the MERS Affidavit.

It is apparent that appropriate procedures, establishing a complete paper trail, reflecting timely recorded, comprehensive transfers, and disclosing all relevant relationships among Key Bank, MERS and Del Norte, are not present in the established facts of this proceeding. An assignment either directly from Del Norte to MERS, or one referencing the underlying note and indicating MERS' nominee status, could have avoided these problems. See *Countrywide Home Loans, Inc. v. Mortgage Electronic Registration Sys., Inc.*, 2004 WL 1836744, *1, fn. 2, 2004 Ohio App. Lexis 3939, *2, fn. 2, C.A.` No. 22000 (Ohio Ct.App. Aug.; 18, 2004) ("MERS serves as something similar to a statutory agent . . . and is always listed on the original mortgage as 'nominee' for some third party . . . .")

It, however, remains undisputed that MERS was acting as an agent on the mortgage for Del Norte and that MERS coordinated the service obligations on the mortgage with SN Servicing Corporation. The MERS Affidavit. As noted, it is not a requirement of Ohio law that the assignment from Key Bank indicates MERS was acting as an agent. MERS has a limited agency relationship with all its members, including Del Norte. There is no dispute that, among MERS, Del Norte and SN Servicing Corporation, the note and the beneficial rights under the mortgage are owned by Del Norte.

To the extent there was a failure to comply with certain provisions of the terms of the agency agreement between Del Notre and MERS, any such failure, in the factual circumstances of this proceeding, is not sufficient to prevent the determination that MERS has the first and best lien against the property and this lien may not be avoided by Gemini.

### The Debtor as a Hypothetical Bona Fide Purchaser

■ Despite the failure to comply with the strict terms of the agency relationship, the court is unable to conclude that a hypothetical bona fide purchaser could be misled by the assignment. Cf. *Carius v. Ohio Contract Purchase Co.*, 30 Ohio App. 57, 67, 164 N.E. 234 (1928) ("We therefore have come to the conclusion that in the instant case the writing upon the back of these notes was an assignment, and it not only assigned the note, but assigned the mortgage; and there were other circumstances here that would put the purchaser upon its guard . . . .").

MERS holds legal title as mortgagee of record to over 40 million mortgages. The MERS Affidavit, ¶ 5. It streamlines the servicing of these mortgages and the transfer of the beneficial ownership interest between members. See *Merscorp, Inc. v. Romaine*, 24 A.D.3d 673, 808 N.Y.S.2d 307 (N.Y.App.Div.2005). MERS does not, and has apparently never, held the beneficial interest in any mortgage or note. The

84

note and beneficial interest in the mortgage undeniably went from Key Bank to Del Norte and the assignment of legal title to the mortgage from Key Bank to MERS was recorded. Cf. *Snyder v. Castle,* 16 Ohio App. 333 (1922) (Failure to record an assignment invalidates a mortgage where the court found fraud by a third party and the court must choose between two innocent parties). Absent fraud, or other circumstances not present in this adversary proceeding, the court cannot invalidate the mortgage which was originally recorded properly by Key Bank. Under a hypothetical bona fide purchaser analysis, that purchaser would clearly be on clear notice that the property was encumbered.

Although Ohio case law is replete with fact patterns invalidating mortgages under Ohio law for technical details in the perfection of the mortgage, the court finds no precedent under Ohio law to eliminate a mortgage based on procedural defects in an assignment that was duly recorded.[4] The fact that the note was belatedly registered with MERS does not change the essential, limited agency relationship between MERS and Del Norte, which granted MERS undisputed authority to hold the legal title to the mortgage.

The court determines, despite an apparent failure to comply with the terms of the agency relationship between Del Norte and MERS, any bona fide purchaser would have been on clear notice of a recorded mortgage and an assignment. A required

inquiry would show that Del Norte held the underlying note and, therefore, the beneficial interest in the mortgage. In the factual circumstances presented in this adversary the debtor cannot avoid the mortgage held by Del Norte.

### Conclusion

This court finds that Del Norte holds the first and best lien against the property and this lien may not be avoided by Gemini. Any filed proof of claim in this case by MERS shall be deemed to have been filed as an agent of Del Norte.

The *Plaintiff's Motion for Summary Judgment* (Doc. 74) is **DENIED** and Del Norte Refi, LLC's Amended Motion for Summary Judgment (Doc. 79) is **GRANTED.**

---

4. Interestingly, under Kansas law, a hypothetical bona fide purchaser could not defeat a recorded mortgage even if a subsequent assignment was not recorded at all. *In re Patton,* 314 B.R. 826, 832–33 (Bankr.D.Kan. 2004). The court noted that "a recorded and unreleased mortgage is notice of the lien, no matter who owns it. In the present case, the mortgage is recorded and unreleased, and any subsequent purchaser will have notice of its existence, regardless of who possesses the note and mortgage at the time. Therefore, section 544(a)(3) may not be utilized to avoid

the defendant's assigned interest in the Mortgage, which is a valid and perfected lien on the plaintiffs' homestead." *In re Patton,* 314 B.R. 826, 833 (Bankr.D.Kan.2004). The court need not address this issue, since the assignment in this adversary proceeding was recorded. However, under Ohio Revised Code § 5301.25, it appears that the Debtor is correct that an assignment must be recorded to be effective against a bona fide purchaser. For a collection of cases on the recording of assignments, see 59 C.J.S. Mortgage § 345 (updated May 2006).